UNITED STATES of America,
Plaintiff,

v.

John Manuel SOLIS, Defendant.

No. CR 74–1592–HP.

United States District Court,
C. D. California.

March 27, 1975.

William D. Keller, U. S. Atty. by Vincent M. Von Der Ahe, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Robert H. Green and Peter C. Norton, Santa Ana, Cal., for defendant.

MEMORANDUM AND ORDER
GRANTING MOTION
TO SUPPRESS

PREGERSON, District Judge.

On October 10, 1974, a U. S. Magistrate, acting on the supporting affidavit of a special agent of the Drug Enforcement Administration (DEA), issued a warrant to search a completely enclosed semi-trailer parked at the rear of a Shell Service Station in Santa Ana, California. Under the authority of this search warrant, DEA agents opened the trailer's doors and seized a large cache of marijuana. As a result of the search, defendant Solis was indicted for various illegal transactions involving a controlled substance in violation of 21 U.S.C. § 841(a)(1).

On February 2, 1975, the court heard the defendant's motion to suppress. The question presented by this motion is whether the search warrant was issued upon probable cause as required by the Fourth Amendment to the Constitution.

At the hearing on the motion to suppress, the Government, in seeking to establish probable cause, relied solely on the fact that when two trained U. S. Customs dogs approached the closed trailer each gave a positive alert that marijuana was inside. These dogs, Blue and Baron, and their respective trainers, U. S. Customs Dog Handlers, Walter Kelley and Harold Taylor, were dispatched to the Shell Service Station on October 10, 1974, in response to a tip from an informant of *unproven* reliability. Earlier that day this informant told a DEA special agent that approximately 2,000

pounds of marijuana had been secreted under the floor boards of a semi-trailer parked at the rear of the Shell Station.

At the hearing, the handlers testified that they used the olfactory senses of each dog to determine whether or not marijuana was in the trailer. First, Blue was employed. Twenty feet from the trailer, he gave a positive alert. The alert intensified as this specially trained dog approached and then reached the closed trailer. Blue's actions—snorting, throwing his head, scratching, etc.—signaled to his handler, Mr. Kelley, the message that marijuana was inside the trailer. After Blue left the scene, Baron went to work. He started to alert twenty-five yards from the target and conveyed a similar positive message to his handler, Mr. Taylor. Although the dogs clearly responded to the odor of marijuana emanating from the trailer, both handlers testified that a person standing next to the vehicle could not smell the contraband inside.

The question of the dogs' reliability was also raised at the hearing. On that subject both handlers testified that their trained dogs, whose sense of smell is said to be eight times more powerful than man's, are 100% reliable in detecting certain kinds of narcotics, including marijuana.[1] In short, both handlers were certain that marijuana was contained in the closed trailer when their dogs alerted at the Shell Station. They conveyed this information to a DEA special agent who later that day signed the affidavit in support of the search warrant. That supporting affidavit described each dogs' positive alert to marijuana in the trailer and referred to the animals' reliability in detecting marijuana on other occasions.

As stated earlier, the Government relies solely on the positive responses of two trained dogs to establish probable cause for the search of the trailer by DEA agents. This narrow reliance raises this crucial question: Rather than merely establishing probable cause to search the trailer, did the Government's use of these trained dogs to initially discover the presence of marijuana in the trailer constitute a search *per se* under the Fourth Amendment?

This question was pondered by the court and counsel at the hearing on the motion to suppress. In response to a hypothetical question put to him by the court, Government counsel expressed his belief that a search would occur if the Government were to focus specially designed scientific equipment on a closed trailer and if that equipment then gave a positive reading for marijuana. Again, responding to the court, Government counsel candidly stated that he could see no difference between using such equipment and using dogs.

After the hearing on the motion to suppress, further research by the court disclosed a Ninth Circuit decision which bears on the question presented here. That case is Corngold v. United States, 367 F.2d 1 (9th Cir. 1966). In *Corngold*, Customs agents situated in public hallways outside Corngold's apartment, employed a "scintillator," an instrument sensitive to radiation, to determine that Corngold had a quantity of watches with radium treated dials in his apartment. On appeal from his convictions for receiving and concealing smuggled watches in violation of 18 U.S.C. § 545 and for conspiring to commit the offense in violation of 18 U.S.C. § 371, Corngold contended that the walls of his apartment were "penetrated" and that his apartment was searched by means of the "scintillator" in violation of his Fourth Amendment rights. Citing Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942), the Ninth Circuit, *en banc*, concluded that Corngold's Fourth Amendment rights were not violated. However, the basis for that conclusion was undermined a year later when the Supreme Court in decid-

---

[1] As an example of Blue's reliability, Mr. Kelley cited an incident when his dog alerted to a single seed of marijuana contained in a seaman's steel locker.

ing Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), said that the "trespass" doctrine enunciated in *Goldman* is no longer controlling. 389 U.S., at 353, 88 S.Ct. 507. Therefore, this decision does not authoritatively foreclose this court from concluding that the Fourth Amendment applies to the use of the dogs in this case.

To determine whether there was a search through use of dogs in this particular case, analysis must focus on Katz v. United States, *supra*. *Katz* and the case before this court are analogous. *Katz* involved the uninvited electronic ear, whereas this case involves the uninvited canine nose. Katz was convicted of transmitting wagering information by telephone across state lines in violation of 18 U.S.C. § 1084. F.B.I. agents by means of an electronic listening and recording device attached to the outside of a public telephone booth overheard Katz's end of the telephone conversation which was introduced into evidence at Katz's trial over his objection. The Court said that the "Government's activities in electronically listening to and recording [Katz's] words violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment." *Id.*, at 353, 88 S.Ct. at 512. Moreover, in words which are pertinent here, the Court also said: "What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection. (Citations omitted.) But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Id.*, at 351–52, 88 S.Ct. at 511.

Thus, *Katz* defines a search as a Governmental intrusion into an area in which a person has a reasonable expectation of privacy. Accordingly, this court must decide whether Solis had a justifiable or reasonable expectation that the interior of his closed trailer, which was parked at a service station accessible to the public, would be treated as a private place and that this private place would not be subject to olfactory intrusion by trained Government dogs in the absence of a search warrant issued upon probable cause. See United States v. Magana, 512 F.2d 1169 (9th Cir. Feb. 12, 1975); Ponce v. Craven, 409 F.2d 621, 625 (9th Cir. 1969).

■ The court believes that Solis had such an expectation of privacy. His trailer was completely enclosed—its interior was not exposed to public view. Furthermore, the odor of the marijuana secreted in the trailer was not perceptible to trained Government agents standing outside of and adjacent to the closed vehicle. But that odor, undetectable by trained Government agents, was easily detected by two trained Customs dogs whose keen olfactory powers are said to be 100% reliable in detecting certain narcotic substances. Thus, by employing the olfactory senses of two trained dogs, Government agents gained information substantially equivalent to what they would have acquired had they actually opened the doors and examined the trailer's concealed interior. Under these facts, the court finds that Solis did have a reasonable and justifiable expectation that the interior of his completely enclosed trailer was a private place protected from a search without a warrant issued upon probable cause, and that the use of these dogs contravened this expectation and invaded this private area. Therefore, under the facts of this case, the court concludes that the use of the dogs constituted a search *per se* under the Fourth Amendment.

■ Since the use of trained dogs in this case constituted a search, that search which was conducted in absence of a warrant supported by probable cause is invalid. Moreover, the subsequent search by DEA agents, even though made pursuant to a warrant, is also invalid because the crucial information alleged in the supporting affidavit —the positive alerts of two trained dogs to marijuana in the trailer—was the fruit of the earlier illegal search.

Therefore, the motion to suppress is granted.

In the final analysis, whether a governmental intrusion into a private area constitutes a reasonable search under the Fourth Amendment depends on the kind and degree of intrusion which a free society is willing to tolerate. In the absence of a warrant supported by probable cause or certain recognized exceptions for a warrantless search, people living in a free society should not, for example, be required to tolerate intrusions into their privacy by the Government's use of electronic monitoring equipment, high power telescopes, or the keen olfactory powers of specially trained dogs. These and other extraordinary information gathering devices gravely threaten each person's ability to maintain any semblance of privacy. It is this threat which compels this court to conclude that the method of information gathering involved here constitutes a search under the Fourth Amendment.