UNITED STATES of America,
Plaintiff-Appellant,

v.

John Manuel SOLIS, Defendant-Appellee.

No. 75–1831.

United States Court of Appeals,
Ninth Circuit.

June 2, 1976.

William Sheffield (argued), Santa Ana, Cal., for defendant-appellee.

Vincent Von der Ahe, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellant.

OPINION

Before SMITH,* TRASK and GOODWIN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The United States appeals from an order, entered in May of 1975 by the District

---

* The Honorable J. Joseph Smith, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

Court for the Central District of California, Harry Pregerson, Judge, 393 F.Supp. 325, granting defendant-appellee Solis' pretrial motion to suppress evidence. We find error in the grant of the suppression order and we reverse and remand.

On October 10, 1974, an informant of unproven reliability told a government drug agent that there was a white semi-trailer parked at the rear of a particular gasoline station and that the floor of the trailer contained approximately one ton of marijuana. The informant stated also that the trailer was distinguishable by its paper license plate and by white powder on the outside of its rear doors. The informant stated further that on at least seven occasions he had assisted a John Solis in the unloading of large quantities of white-powder-covered marijuana bricks from similar trailers. That same day, the drug agent proceeded to the designated gas station open to the public and found a white semi-trailer with a paper license plate and with what appeared to be white talcum powder on its rear doors. The drug agent later stated in an affidavit that, because of his training and experience, he knew that marijuana was often smuggled in semi-trailer floors and that talcum powder was commonly coated on marijuana bricks to conceal the marijuana's odor.

The drug agent relayed what he had learned to Customs. Consequently two Customs officers took specially trained marijuana sniffing dogs—across property to which the public had access—to the trailer. Each dog indicated that marijuana was located inside the trailer. The dogs noticed the odor of the marijuana, one from as far away as 25 yards. Each confirmed the reaction within one foot of the trailer.

On the basis of the manner in which the dogs reacted toward the trailer, a magistrate issued a search warrant for the trailer. The trailer was searched and a large amount of marijuana was found. As a result, Solis was indicted for three violations of 21 U.S.C. § 841(a)(1) involving the possession with intent to distribute and the distribution of marijuana.

Solis made a pretrial motion to suppress the use of the marijuana as evidence against him. Testimony at the hearing on the motion indicated that Blue and Baron, the retrievers used as marijuana dogs, were extremely reliable, that the dogs' sense of smell was eight times as acute as that of a person, that the trailer was completely enclosed, that its walls were approximately six inches thick, and that a person outside the trailer could not have smelled the marijuana inside it. None of these conclusions is disputed by the parties. The government conceded that prior to the use of the dogs no probable cause existed for a warrant to search the trailer.

On March 27, 1975, the district court filed a memorandum and order granting the suppression motion. The court reasoned that the warrantless detection of the marijuana by the dogs constituted an unlawful search under the fourth amendment and that the subsequent search of the trailer was therefore unlawful because the warrant authorizing it had been issued on the basis of evidence which was the fruit of the earlier illegal search. We do not agree that the use of the dogs here constituted a search but rather monitoring of the air in an area open to the public in determining the possible existence of a criminal enterprise nearby.

We agree with Judge Pregerson that the critical question is the kind of intrusion a free society is willing to tolerate. We disagree, however, with his conclusion that the intrusion here was beyond reasonable limits of toleration. Generally evidence acquired by unaided human senses from without a protected area is not considered an illegal invasion of privacy, but is usable under doctrines of plain view or open view or the equivalent. Odors so detected may furnish evidence of probable cause of "most persuasive character," *Johnson v. United States,* 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948), "physical fact[s] indicative of possible crime," *Taylor v. United States,* 286 U.S. 1, 6, 52 S.Ct. 466, 76 L.Ed. 951 (1932). See also *United States v. Ventresca,* 380 U.S. 102, 111, 85 S.Ct. 741, 13

L.Ed.2d 684 (1965); *United States v. Pond,* 523 F.2d 210 (2d Cir. 1975); *United States v. Walker,* 522 F.2d 194 (5th Cir. 1975); *United States v. Johnston,* 497 F.2d 397 (9th Cir. 1974); *United States v. Martinez-Miramontes,* 494 F.2d 808 (9th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974); *United States v. Brown,* 487 F.2d 208 (4th Cir. 1973), *cert. denied,* 416 U.S. 909, 94 S.Ct. 1617, 40 L.Ed.2d 114 (1974); *United States v. Lewis,* 392 F.2d 377 (2d Cir.), *cert. denied,* 393 U.S. 891, 89 S.Ct. 212, 21 L.Ed.2d 170 (1968); *United States v. Gillet,* 383 F.2d 843 (2d Cir. 1967).

■ Aids such as flashlights or binoculars raised no great problem and at one time the line between legal observation and illegal invasion was drawn at physical trespass within a protected area. *Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928). However, the use of sophisticated modern mechanical or electronic devices and the frightening implications of their possible development have led to abandonment of the test of physical trespass within the protected area and a broadening of protection to cover a "reasonable expectation of privacy." *Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). This we take to be the test, to be applied to the circumstances of each case.

One commentator has gone so far as to suggest that the use of any aid which improves, enhances or replaces the natural senses of an officer is a search and should be equated with an unreasonable invasion of privacy. See Schuster, "Constitutional Limitations of the Use of Canines to Detect Evidence of Crime," XLIV Fordham L.Rev. 973, 990 (1976). This suggestion would have the virtue of simplicity and certainty in application and would uphold the order under attack here. Yet such a rule would require the abandonment of a useful law enforcement tool which can be and here was utilized with minimal invasion of privacy in order to obtain evidence of probable cause for review by an impartial magistrate before any physical invasion of the protected area was undertaken. We do not agree that such a hard and fast rule is necessary or desirable.

■ Under all the circumstances we think the use of the dogs here was a reasonable response to the situation facing the officers.

Dogs, because of their keen olfactory sense, have long been used to assist police in search and rescue missions, as well as in guard duties. Detection of contraband is a similar and related task. The recent proliferation of crimes involving the transportation of drugs and explosives has led naturally to the training and use of dogs such as these retrievers to detect the presence of such contraband.

In two recent cases convictions based on such use have been upheld. *United States v. Bronstein,* 521 F.2d 459 (2d Cir. 1975); *United States v. Fulero,* 162 U.S.App.D.C. 206, 498 F.2d 748 (1974). There was some disagreement among the judges as to whether the sniffing constituted a search at all but, if searches, they were considered reasonable under the circumstances. We hold the procedure followed here also reasonable.

The agents had a founded suspicion based on the partial corroboration of the informant's statements by confirming the location of the trailer, the license described and the presence of the talc, known to be associated with the masking of marijuana odor. Calling upon the dogs for further corroboration by detection of the odor outside the trailer as a basis for application to a magistrate for a warrant to enter the vehicle was a reasonable course of action on the part of the agents.

The dogs' intrusion such as it was into the air space open to the public in the vicinity of the trailer appears to us reasonably tolerable in our society. There was no invasion of the "curtilage"—the trailer. No sophisticated mechanical or electronic devices were used. The investigation was not indiscriminate, but solely directed to the particular contraband. There was an expectation that the odor would emanate from the trailer. Efforts made to mask it

were visible. The method used by the officers was inoffensive. There was no embarrassment to or search of the person. The target was a physical fact indicative of possible crime, not protected communications. We hold that the use of the dogs was not unreasonable under the circumstances and therefore was not a prohibited search under the fourth amendment. We reverse the order and remand for trial.