(No. 48292.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DANIEL CAMPBELL et al., Appellees.

*Opinion filed June 1, 1977.—Rehearing denied Oct. 3, 1977.*

GOLDENHERSH, J., specially concurring.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of

Chicago, and Laurence J. Bolon, David A. Novoselsky and Bertina E. Lampkin, Assistant State's Attorneys, and John J. Verscaj, law student, of counsel), for the People.

Albert J. Armonda, of Chicago, for appellees Daniel Campbell and Michael Ward.

Jerome Rotenberg and Lawrence P. Hickey, of Chicago, for appellee Patrick Myers.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

The defendants, Daniel Campbell, Patrick Myers and Michael Ward, were arrested and charged with the knowing possession of marijuana in violation of section 4 of the Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, par. 704). Each defendant filed a motion to suppress evidence seized in a search of his luggage subsequent to his arrest. The motions were sustained following a consolidated hearing before the Cook County circuit court. The State appealed, the Appellate Court for the First District affirmed (35 Ill. App. 3d 196), and we allowed the State's petition for leave to appeal.

The events leading up to the arrest of the defendants occurred on February 27, 1974. Dale Anderson, a special agent for the Federal Drug Enforcement Administration, testified at the hearing that sometime after 2 p.m. on February 27 he engaged in a telephone conversation with Agent Robertson of the Administration's San Antonio office. Agent Robertson related that the defendants were due to arrive at O'Hare Airport at 4:30 p.m. on Braniff flight No. 58 from Dallas, Texas. Agent Anderson also related the factual background of this information, testifying that Robertson had received word from Agent Nichols of the Border Patrol that defendant Ward had been stopped trying to enter the country illegally from Mexico.

He was carrying $2,700 and had explained he planned to fly to Chicago and then go to Michigan. Ward had previously been arrested in Texas for possession of marijuana, and his name was on a customs lookout list. Subsequently Ward was observed in El Paso, Texas, where he, Campbell and Myers boarded a bus to San Antonio after checking eight suitcases and a footlocker on the bus. In San Antonio, they had boarded Braniff flight No. 58 to Chicago. Anderson verified this information by calling Agent Nichols in El Paso, and then notified the Chicago police that defendants were arriving in Chicago and it was suspected they had marijuana in their luggage. The Chicago police then brought to the airport a canine unit consisting of two German Shepherd dogs and their two handlers. This unit was stationed behind the baggage retrieval area of Braniff at O'Hare. All of the luggage from flight No. 58 was placed behind closed doors in a nonpublic area where each dog was permitted to independently sniff at the luggage. Anderson observed each dog "alert" to the same two suitcases in a manner best described as an attack upon the two bags. The handlers indicated to Agent Anderson that the dogs' reactions meant that marijuana or a marijuana-like substance was present in the two cases. The parties stipulated at the hearing that "the handlers would testify that they have worked with these dogs on numerous occasions, that these dogs are specially trained for the purpose of detecting narcotics, that they are not used for other police work except for the purposes of narcotic investigations and that their actions in the airport indicate to the handlers, based on their previous experiences with the dogs that there was [*sic*] narcotics in the suitcases."

Donald Senece, a Chicago police officer, observed Ward disembark from flight No. 58 in the company of the other two defendants. Agent Anderson observed Campbell and Myers claim eight suitcases, including the two which had attracted the dogs, and one footlocker and place them

on wheeled carts. He did not recall which defendant had the claim checks or which defendant actually touched the suspect suitcases. Ward joined them about 100 yards from the North Central Airlines ticket counter and walked with them to it. As they were about to check in their luggage, all three men were placed under arrest. Anderson opened the two suspect suitcases and discovered the marijuana which the trial court suppressed. The remaining luggage was taken to police headquarters where additional marijuana was found in each piece of luggage. The trial court also suppressed this evidence. The marijuana was wrapped in quadruple bags and heavy talcum powder. No arrest or search warrants had been obtained.

The warrantless arrests of the defendants were proper, of course, if the officers had probable cause, *i.e.*, reasonable grounds to believe the defendants were committing the offense of unlawful possession of marijuana at the time of the arrest. (*People v. Robinson* (1976), 62 Ill. 2d 273, 276; *People v. Wright* (1969), 42 Ill. 2d 457, 459; Ill. Rev. Stat. 1973, ch. 38, par. 107—2(c).) If the use of the dogs trained in detecting marijuana was permissible here, it cannot be seriously argued that probable cause did not exist at the time of defendants' arrest. (*Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329; *People v. Clay* (1973), 55 Ill. 2d 501.) At that point Agent Anderson had been informed by Agents Robertson and Nichols, both of whom were reliable sources, that Ward, a man with a prior drug arrest, had been stopped trying to illegally enter the United States from Mexico, that he had $2,700, and that he planned to fly to Chicago; that, despite being on a custom's lookout list, he had managed to enter this country and was traveling with Myers and Campbell; and that they were carrying eight suitcases and a footlocker and flying to Chicago on Braniff flight No. 58, arriving at 4:30. Agent Anderson had then notified Chicago police that three individuals suspected of

carrying marijuana in their luggage were arriving at the airport. As a result, the police brought and used the canine unit. All of this information, including the probable presence in the luggage of marijuana, had been corroborated in detail by the officers at the time the arrests were made.

Defendants urge, however, that the reactions of the dogs to the suitcases should not be considered in determining whether probable cause existed because the use of the dogs constituted an impermissible search unjustifiably invading the privacy of the owners of the luggage; and that probable cause was not established by the remaining facts. While probable cause may have existed apart from the reactions of the dogs (see *United States v. Murray* (9th Cir. 1973), 492 F.2d 178, 188, *cert. denied* (1974), 419 U.S. 942, 42 L. Ed. 2d 166, 95 S. Ct. 210), we need not consider that question, since we hold the use of the dogs permissible.

Defendants strenuously maintain that police dogs sniffing the air around their luggage is a search from which they are entitled to fourth amendment protection. They cite only one case so holding, and it was reversed on appeal. (*United States v. Solis* (C.D. Cal. 1975), 393 F. Supp. 325, *rev'd* (9th Cir. 1976), 536 F.2d 880.) We have found only one other case expressly holding that the use of trained dogs to detect marijuana constitutes a search, and that court also held that the search was reasonable although warrantless. (*State v. Elkins* (1976), 47 Ohio App. 2d 307, 354 N.E.2d 716.) In contrast, other State and Federal courts have expressly stated that no search occurred. (*Solis; State v. Martinez* (1976), 113 Ariz. 345, 554 P.2d 1272.) It is in our judgment immaterial whether that action is characterized as a search, "a monitoring of the air" (*United States v. Solis* (9th Cir. 1976), 536 F.2d 880) or described in some other manner. The fundamental and decisive inquiry is whether the conduct in using the

dogs was reasonable (*People v. Robinson* (1976), 62 Ill. 2d 273, 276), and we believe it was. This is the unanimous conclusion in every Federal circuit which has considered the issue.

In *United States v. Fulero* (D.C. Cir. 1974), 498 F.2d 748, the court rejected as frivolous the argument that a dog's sniffing of the air around footlockers in a bus terminal was an unconstitutional intrusion. *United States v. Bronstein* (2d Cir. 1975), 521 F.2d 459, involved a factual situation virtually identical to ours, and the court concluded that the limited but effective use of the dog did not create a constitutional issue of substance. In *United States v. Solis* (9th Cir. 1976), 536 F.2d 880, a trained dog was used to verify information that a semitrailer parked at a gas station contained marijuana. The court stated that the use of the dog was not a search, and held such use is reasonably tolerable in our free society. The same result obtains in the first circuit. *United States v. Meyer* (1st Cir. 1976), 536 F.2d 963; *United States v. Race* (1st Cir. 1976), 529 F.2d 12.

Defendants rely upon *Johnson v. United States* (1947), 333 U.S. 10, 92 L. Ed. 2d 436, 68 S. Ct. 367, wherein the Supreme Court indicated that odors alone did not justify a warrantless search. That decision, however, actually supports our conclusion, since the court there went on to say that distinctive odors can be most persuasive evidence of probable cause. (333 U.S. 10, 13, 92 L. Ed. 2d 436, 440, 68 S. Ct. 367, 369.) Moreover, its holding implicitly recognized that no unconstitutional search occurred when the officer smelled the odor of narcotics. It is clear that the detection of narcotics by police smelling the odor is a permissible method of establishing probable cause (*People v. Wolf* (1975), 60 Ill. 2d 230; *United States v. Martinez-Miramontes* (9th Cir. 1974), 494 F.2d 808, *cert. denied* (1974), 419 U.S. 897, 42 L. Ed. 2d 141, 95 S. Ct. 176), and we see no significant

difference in the use of dogs under identical circumstances. *United States v. Bronstein* (2d Cir. 1975), 521 F.2d 459.

Defendants also argue that the uninvited noses of the dogs have intruded into an area where they had a reasonable expectation of privacy (*Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507). But they do not explain in what manner the uninvited canine nose is more intrusive than the uninvited human nose in the same location. More importantly, their argument fails since a protectable expectation of privacy must be reasonable and justifiable. (*United States v. White* (1971), 401 U.S. 745, 752, 28 L. Ed. 2d 453, 459, 91 S. Ct. 1122, 1126.) Their intent and efforts to so conceal and disguise the odor of the marijuana (which was itself contraband) that its presence in the luggage could not be detected simply does not meet this test. Nor can there be the same expectation of privacy in luggage checked on an airline as exists in one's home or private property. (*Cf. United States v. Johnston* (9th Cir. 1974), 497 F.2d 397.) A desire to conceal the odor of contraband hidden in a container exposed to the public is not, in our judgment, entitled to fourth amendment protections any more than is an analogous desire to conceal something in an open field (*Hester v. United States* (1924), 265 U.S. 57, 68 L. Ed. 898, 44 S. Ct. 445), in plain view (*Ker v. California* (1963), 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623), or otherwise exposed to an individual (*United States v. White* (1971), 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122) or the public (*United States v. Hufford* (9th Cir. 1976), 539 F.2d 32).

Defendant Myers refers us to *People v. Williams* (1975), 51 Cal. App. 3d 346, 124 Cal. Rptr. 253, where the California Court of Appeals suppressed marijuana discovered when a trained dog "alerted" to a bag in an airline baggage container. That case is not inconsistent with our conclusion, however, for the police in that case

had neither the airline's permission to be in the baggage room nor any information indicating the presence of narcotics. The court carefully distinguished *People v. Furman* (1973), 30 Cal. App. 3d 454, 106 Cal. Rptr. 366, where the court found probable cause when the trained dog's reaction corroborated an informant's tip that there might be narcotics in the defendant's suitcase.

It is axiomatic that the fourth amendment protects the guilty as well as the innocent, but that amendment was a reaction to the general warrants and unsupported searches which harassed the early colonists. (*Chimel v. California* (1969), 395 U.S. 752, 761, 23 L. Ed. 2d 685, 692, 89 S. Ct. 2034, 2039.) Evidence seized in violation of this amendment is suppressed to deter such conduct, thereby protecting the privacy of innocent persons. (*United States v. Janis* (1976), 428 U.S. 433, 446, 49 L. Ed. 2d 1046, 1056, 96 S. Ct. 3021, 3028; *Mapp v. Ohio* (1961), 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684; *Weeks v. United States* (1914), 232 U.S. 383, 391, 58 L. Ed. 652, 655, 34 S. Ct. 341, 344.) But the use of trained dogs to detect the odor of marijuana poses no threat of harassment, intimidation or even inconvenience to the innocent citizen. Nothing of an innocent but private nature and nothing of an incriminating nature other than the narcotics being sought can be discovered through the dog's reaction to the odor of the narcotics.

The use of trained dogs as a follow-up investigative technique to partially corroborate information received is, in our judgment, a useful, entirely reasonable and permissible procedure. If it be considered an intrusion into privacy, that intrusion is minimal and inoffensive. In this case the procedure employed was limited and exact. It was also objective in that the dogs selected the suitcases containing contraband independently and from among all those on the plane. There was no fourth amendment violation.

The reliability of the dogs is, of course, a crucial consideration, and defendants seek to challenge that reliability because the dogs detected the marijuana in only two of the nine pieces of luggage. Defendants, however, stipulated the handlers would testify that the reactions of the dogs indicated the presence of marijuana in the two bags. Additionally, it seems to us, the important focus in determining reliability is whether the dogs indicated marijuana existed where it did not, for only then could innocent persons be affected by their use. All the failure to detect it in the other seven containers indicates to us is that defendants were more successful in their efforts to conceal the odor of the marijuana in those pieces of luggage.

Defendant Ward argues the officers at the time of his arrest had no reason to believe the two suspect suitcases belonged to him. As we indicated earlier, however, the totality of the facts then known to the officers established probable cause to assume all three defendants were traveling together and that the luggage containing marijuana was under their joint control.

Finally, it is argued that the warrantless search of the luggage at the airport, and the continuation of that search at the police station was impermissible. Not all warrantless searches are impermissible (*People v. Wiseman* (1974), 59 Ill. 2d 45, 48), and one of the exceptions is a search incident to a lawful arrest (*Chimel v. California* (1969), 395 U.S. 752, 763, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040; *Agnello v. United States* (1925), 269 U.S. 20, 70 L. Ed. 145, 46 S. Ct. 4; *People v. Williams* (1974), 57 Ill. 2d 239, 243, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506). The scope of such a search includes the person of the defendant and the area within his immediate control (*Williams; People v. Perry* (1971), 47 Ill. 2d 402), and this search falls within this definition (*United States v. Edmonds* (2d Cir. 1976), 535 F.2d 714,

720; *United States v. Frick* (5th Cir. 1973), 490 F.2d 666, 669, *cert. denied* (1975), 419 U.S. 831, 42 L. Ed. 2d 57, 95 S. Ct. 55; *People v. McGowan* (1953), 415 Ill. 375, 382; *State v. Culver* (Del. 1972), 288 A.2d 279, 283; *People v. Perel* (1974), 34 N.Y.2d 462, 315 N.E.2d 452). Additionally, the marijuana for which the police searched the luggage was directly involved in the offense. This contraband was without question a proper object of search by the police. (*United States v. Edwards* (1974), 415 U.S. 800, 805, 39 L. Ed. 2d 771, 777, 94 S. Ct. 1243, 1238; *People v. Palmer* (1976), 62 Ill. 2d 261, 263; *People v. Jeffries* (1964), 31 Ill. 2d 597, 601; *People v. Van Scoyk* (1960), 20 Ill. 2d 232, 235; *People v. Tillman* (1953), 1 Ill. 2d 525, 532.) Similarly, "[i]t is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention." (*United States v. Edwards* (1974), 415 U.S. 800, 803, 39 L. Ed. 2d 771, 775, 94 S. Ct. 1234, 1237; *Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975; *United States ex rel. Muhammad v. Mancusi* (2d Cir. 1970), 432 F.2d 1046, *cert denied* (1971), 402 U.S. 911, 28 L. Ed. 2d 653, 91 S. Ct. 1391; *United States v. Robbins* (6th Cir. 1970), 424 F.2d 57, *cert. denied* (1971), 402 U.S. 985, 29 L. Ed. 2d 151, 91 S. Ct. 1674; *People v. Wiseman* (1974), 59 Ill. 2d 45, 49; *People v. Canaday* (1971), 49 Ill. 2d 416, 421.) The ultimate test, of course, is the reasonableness of the search which was made, not whether the officers could have secured a warrant, and we find no unreasonable conduct here. (*Cardwell v. Lewis* (1974), 417 U.S. 583, 595, 41 L. Ed. 2d 325, 338, 94 S. Ct. 2464, 2472; *United States v. Edwards* (1974), 415 U.S. 800, 807, 39 L. Ed. 2d 771, 777, 94 S. Ct. 1234, 1239; *People v. Wright* (1969), 42 Ill. 2d 457, 460; *People v. Jones* (1967), 38 Ill. 2d 427, 434.) Rather, we believe the conduct here constituted commendable police procedure.

The judgments of the appellate and circuit courts are accordingly reversed, and the cause remanded to the circuit court of Cook County with directions to deny defendants' motion to suppress and proceed in accordance herewith.

*Reversed and remanded, with directions.*

MR. JUSTICE GOLDENHERSH, specially concurring:

Although I find it offensive that the luggage of airline passengers is subjected to this type of "dog sniffing" search, I conclude, with reluctance, that it is not constitutionally impermissible. The record, however, shows a warrantless search at the airport and a continuation of the search at the police station when the luggage had been taken off the luggage carrier, defendants were in custody, and had no access to it. Under these circumstances there was no justification for a warrantless search. This case is strikingly similar to *United States v. Chadwick* (1st Cir. 1976), 532 F.2d 773, and I agree with the Court of Appeals for the First Circuit that under *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034, this type of warrantless search was unreasonable and unlawful. Had this issue been raised by defendants and argued in the briefs, I would dissent rather than specially concur, but in view of their failure so to do, I reluctantly concur in the result.