THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
CHRIST BLAKE *et al.*, Defendants-Appellees.

First District (4th Division)    No. 80-429

Opinion filed February 11, 1981.—Rehearing denied March 25, 1981.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S.
Veldman, and Jeremiah W. Lynch, Assistant State's Attorneys, of counsel), for the
People.

Patrick A. Tuite, of Chicago, for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The defendants, Michael Kraft, Debbie Kraft and Christ Blake, were
charged with possession of a controlled substance. (Ill. Rev. Stat. 1979, ch.
56½, par. 1402(a)(6).) Debbie Kraft and Christ Blake were also charged
with unlawful possession of a hypodermic syringe. (Ill. Rev. Stat. 1979,
ch. 38, par. 22—50.) Prior to trial the defendants moved to suppress the
contraband seized on the grounds that it had been obtained as the result

of an illegal search and seizure. The circuit court of Cook County granted the defendants' motions to suppress the evidence, and the State appeals. Ill. Rev. Stat. 1979, ch. 110A, par. 604(a)(1).

On January 17, 1980, the court held a hearing on the defendants' motions to suppress the evidence. Chicago police officer Thomas Spanos was the sole witness. Spanos testified that from October 1, 1979, until November 24, 1979, the date of the defendants' arrest, he had conducted a surveillance of a basement laundry room in a building at 2505 North Laramie Avenue. The building is a three-story nine flat with a common basement for the use of all the tenants. The entrance to the building is kept locked. To observe the laundry room, Spanos drilled a hole in the door of an apartment adjacent to the area. Spanos had the consent of the landlord to be in the basement and the consent of the tenant to use his apartment.

During the period of surveillance, Spanos observed Debbie Kraft and Michael Kraft enter the basement on several occasions and look into a paper bag which was "stuffed" under an unused refrigerator. Spanos testified that at times he saw two bags, one paper and the other plastic. The landlord informed Spanos that the Krafts were occupants of apartment 2C. The Krafts would sometimes remove items from the bags and return to their apartment with the items obtained. On October 1, 1979, and at various times during the surveillance, Spanos looked into the bags and found contraband.

On November 24, 1979, Spanos saw Debbie Kraft enter the basement at approximately 11:50 p.m. She took one of the bags containing contraband from under the refrigerator and returned to her apartment with the bag. Shortly thereafter Michael Kraft entered the basement and reached under the refrigerator. He was then placed under arrest. As the police were handcuffing Michael Kraft, he shouted to Debbie Kraft, who was standing at the top of the stairs, that the police "had him." Spanos went immediately to the Krafts' apartment, announced his identity, and pushed in the door. He saw Christ Blake standing near the kitchen table. Blake grabbed an armful of "parcels" from the table and ran toward the apartment bathroom. Spanos followed him. As Blake threw the parcels into the toilet, Spanos pushed him aside and recovered the parcels. Spanos then arrested Blake and Debbie Kraft.

Spanos testified that he did not have a warrant to look into the bags, to search the Krafts' apartment, or to arrest any of the defendants.

At the close of the suppression hearing, the trial court found that Spanos' original search of the paper bag was illegal because the bag was not abandoned but was instead the defendants' private property returned each day to its private place. The judge ruled that because the initial search was illegal, the search of the defendants' apartment and the arrests were also illegal.

The State contends that the defendants did not have a "reasonable expectation of privacy" with respect to the paper bag which they left under an abandoned refrigerator in a laundry room accessible to the landlord and other tenants. Therefore, the fourth-amendment protection against unreasonable searches and seizures did not apply to the actions of the police. The defendants argue that their frequent trips to the bag should have indicated to the police that they intended to retain a privacy interest in the bag and its contents.

In *Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507, the Supreme Court stated that a person seeking to claim the protection of the fourth amendment must have a "reasonable expectation of privacy" in the place invaded. The standard used in determining reasonableness is an objective one. A legitimate expectation of privacy is one which society, and not the individual, is prepared to recognize as reasonable. *People v. Loveless* (1980), 80 Ill. App. 3d 1052, 400 N.E.2d 540.

■■ In addressing this issue, we note first that the police had the consent of the landlord to conduct a surveillance of the basement area. Although the defendants seem to dispute the validity of the landlord's consent, we believe that he possessed sufficient authority to allow the surveillance. In *People v. Ford* (1980), 83 Ill. App. 3d 57, 62, 403 N.E.2d 512, 517, the court stated that the authority which justifies a third-party consent "rests * * * on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the coinhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." By leaving the bag in the laundry room, the defendants assumed the risk that any of the building's tenants could have found the bag and examined its contents. Furthermore, it is not unreasonable to assume that the landlord of an apartment building has the right to permit inspection of the common areas.

The defendants rely on *Fixel v. Wainwright* (5th Cir. 1974), 492 F.2d 480, and *United States v. Case* (7th Cir. 1970), 435 F.2d 766, in arguing that a tenant may have an objectively reasonable expectation of privacy even in the common areas of multi-unit dwellings. The defendants in *Fixel* were tenants in a four-unit apartment building with an adjoining backyard. In holding that the defendants could have a justifiable expectation of privacy in the backyard, the court stated that, "[t]he area immediately surrounding and closely related to the dwelling is also entitled to the Fourth Amendment's protection." (492 F.2d 480, 483.) In *Case* the police were stationed in the hallway of an apartment complex which they had entered with a key obtained from the landlord. From this position they were able to overhear certain conversations. The court found that the defendant's privacy was invaded. In doing so, the court

relied on the fact that the hallway was used by a very confined group of tenants and was kept locked. Also, the defendants had changed one of the locks in an attempt to preserve his privacy.

■■ We agree with the court in *Fixel* that "[c]ontemporary concepts of living such as multi-unit dwellings must not dilute [a person's] right to privacy any more than is absolutely required." (492 F.2d 480, 484.) However, given the facts in the case at bar, we cannot conclude that the defendants had an objectively reasonable expectation of privacy in the paper bag seized by the police. The bag was left in a laundry room commonly used by all the tenants. It was hidden beneath a refrigerator owned not by the defendants but by the landlord. Unlike the backyard in *Fixel,* the laundry room was not immediately adjacent to the Krafts' apartment. Also, the defendants here failed to make a reasonable attempt to preserve their privacy as did the defendant in *Case.* The fact that the defendants chose an ordinary paper bag to conceal the contraband further tends to negate the existence of a reasonable expectation of privacy. Unlike a suitcase or other items of personal luggage, a paper bag is not a "common repository for one's personal effects * * * inevitably associated with the expectation of privacy." (*Arkansas v. Sanders* (1979), 442 U.S. 753, 762, 61 L. Ed. 2d 235, 244, 99 S. Ct. 2586, 2587.) Based upon this reasoning, we conclude that the trial court erred in ruling that the search of the paper bag was illegal.

■■ We next consider whether the officer's warrantless entry into the defendants' apartment was proper. A warrantless entry into a residence is improper in the absence of exigent circumstances. (*People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543.) One such exigent circumstance exists where there is a danger that evidence will be destroyed if the police must withdraw in order to obtain a warrant. (*United States v. Rubin* (3d Cir. 1973), 474 F.2d 262, *cert. denied* (1973), 414 U.S. 833, 38 L. Ed. 2d 68, 94 S. Ct. 173.) In the case at bar, the officer saw Debbie Kraft go to her apartment with a bag which the officer knew contained contraband. Michael Kraft then entered the basement and was arrested. He immediately called to Debbie Kraft, who was standing at the top of the stairs, that the police were there and that they "had him." If the police had withdrawn to obtain a warrant, the contraband within the Krafts' apartment would almost certainly have been destroyed. We therefore believe that the officer's warrantless entry into the Krafts' apartment was justified.

Based upon the foregoing reasons, the order of the circuit court of Cook County is reversed.

Reversed.

JOHNSON and LINN, JJ., concur.