THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JOHN ANDREAS, Defendant-Appellee.

First District (2nd Division)   No. 80-1963

Opinion filed September 15, 1981.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Adrienne Noble Nacev, and Alexander Vroustouris, Assistant State's Attorneys, of counsel), for the People.

Patrick G. Reardon and Lawrence J. Suffredin, Jr., both of Chicago, for appellee.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant was charged with two counts of possession of controlled substances. (Ill. Rev. Stat. 1979, ch. 56½, pars. 704(e) and 705(e).) The State appeals the trial court's ruling sustaining defendant's motion to suppress evidence based on the opening of a container by the police in the absence of a search warrant and raises the issue of whether contraband found within the container as the result of the search was properly suppressed. We affirm for the following reasons.

A hearing was conducted on defendant's motion to suppress on May 22, 1980, during which the following evidence was considered. United

States Customs Inspector Ronald Drozek testified that on February 21, 1979, he was working at the Lufthansa cargo facility at O'Hare Field. He reviewed the airline documents of a particular piece of cargo which revealed that it was shipped from Calcutta, India, and consigned to defendant at an apartment on East Goethe Street in Chicago. The cargo consisted of a sheet metal container four feet square, 1½ feet thick, and fastened by two locks. Drozek opened the container by using the keys attached to the airline documents and found within a "dark reddish or a brownish" wooden table approximately three feet in diameter and eight to ten inches thick. He drilled into the table, determined it was hollow, and, after further drilling, obtained a substance from the table which tested positively for marijuana. Drozek the contacted Federal Drug Enforcement Administration (hereinafter DEA) agents and informed them of his findings.

Kenneth J. Labek, DEA special agent, testified that on February 21, 1979, he was informed by Customs of their possession of a table, which had been removed from a container shipped from India, and which was found to contain marijuana. Later that day, Labek saw the table and tested the substance it contained. His test confirmed that it was marijuana. Labek next saw the metal container within which the table was allegedly repackaged at Customs on February 22, 1979. He was not present when the table was repackaged and he could not see into the resealed container. Labek placed the container in a government van and drove to the building on East Goethe, where defendant lived. There, he met Chicago Police Investigator Wayne Lipsek and Sergeant Phil Cline. Labek and Lipsek, posing as delivery men, entered the apartment building and advised security personnel that they had a package for defendant. Minutes later defendant appeared in the lobby and identified himself as John Andreas. Labek told defendant he had a package for him, and defendant replied, "Good. Where is it?" Labek told him it was in the van, and defendant offered to help carry it into the building.

At defendant's request, the container was brought to the hallway outside his apartment door. Labek and Lipsek then walked to the end of the hall and stationed themselves around the corner. Labek observed defendant pull the container into his apartment out of Labek's sight. Thirty or forty-five minutes elapsed between the delivery and defendant's arrest. During that time Labek was either in the hallway or on another floor of the building. He did not keep defendant's apartment under continuing surveillance. Lipsek left the building after delivery of the package to obtain a State search warrant. Five minutes after defendant pulled the package into the apartment, Labek observed defendant exit the apartment and walk to a window or doorway at the end of the hallway. He looked outside, in both directions and downward and then

reentered his apartment. Labek next observed defendant in the hallway with the container, at which time he was placed under arrest and the container was seized. Labek testified the container next to defendant was the same as that delivered earlier. Labek and Lipsek placed the container into the van, and took it to the Chicago Police Department Headquarters at 11th and State Streets. Labek did not observe the contents of the container during this time and was not present when it was opened.

Lipsek testified that after he had left defendant's residence to get a search warrant for the apartment and the container, he received a radio message advising him that defendant had been arrested and to disregard the warrant, which he did. He apparently returned to the apartment and assisted in taking defendant into custody and in the removal of the container to police headquarters. He could not see into the container when it was seized, as it was closed. He was present later that evening when, at police headquarters, the container was opened, the table within it was broken apart, and marijuana was found within. At that time defendant was in custody, but not present. No State or Federal warrant of any kind had been secured.

On June 3, 1980, the court granted defendant's motion to suppress. The State appeals from that ruling.

# I

Both parties agree that whether the warrantless search of the container at police headquarters offends the Fourth Amendment depends upon whether defendant had a legitimate expectation of privacy in the contents of the container. (*Katz v. United States* (1967), 389 U.S. 347, 351, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511; *Rakas v. Illinois* (1978), 439 U.S. 128, 143, 58 L. Ed. 2d 387, 401, 99 S. Ct. 421, 430.) Defendant submits, and we agree, that *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476 (hereinafter *Chadwick*), and *Arkansas v. Sanders* (1979), 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (hereinafter *Sanders*) are controlling in this regard. In *Chadwick*, agents had probable cause to believe that a footlocker which defendants had transported by train contained marijuana. When the defendants claimed the footlocker, the agents arrested them and seized the footlocker. It was searched without a warrant, while under the exclusive control of Federal agents, 1½ hours after the arrests.

The Supreme Court in *Chadwick* held that the contents of the footlocker were clearly under the protection of the Fourth Amendment:

> "By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination. No less than one who locks the doors of his home against intruders, one who safeguards his

personal possessions in this manner is due the protection of the Fourth Amendment Warrant Clause. There being no exigency, it was unreasonable for the Government to conduct this search without the safeguards a judicial warrant provides." 433 U.S. 1, 11, 53 L. Ed. 2d 538, 548, 97 S. Ct. 2476, 2483.

■■ In *Sanders*, the Supreme Court, applying *Chadwick*, concluded that the warrantless search of an unlocked suitcase based upon probable cause was similarly unauthorized. Both cases thus hold that in such circumstances, probable cause alone does not eliminate the warrant requirement: "The mere reasonableness of a search, assessed in the light of the surrounding circumstances, is not a substitute for the judicial warrant required under the Fourth Amendment." (*Sanders*, 442 U.S. 753, 758, 61 L. Ed. 2d 235, 241, 99 S. Ct. 2586, 2590.) (Accord, *People v. Hamilton* (1979), 74 Ill. 2d 457, 386 N.E.2d 53; *People v. Redmond* (1979), 73 Ill. App. 3d 160, 390 N.E.2d 1364; *People v. Vogel* (1978), 58 Ill. App. 3d 910, 374 N.E.2d 1152; *People v. Von Hatten* (1977), 52 Ill. App. 3d 338, 367 N.E.2d 566.) Defendant at bar manifested the same "expectation that the contents would remain free from public examination" as did defendant in *Chadwick*. His expectation of privacy in a sealed package was at least as viable as one's expectation of privacy in an unlocked suitcase. (See *Sanders*, 442 U.S. 753, 762 n.9, 61 L. Ed. 2d 235, 244, n.9, 99 S. Ct. 2586, 2592 n.9.) The fact that Customs agents may have had the right to inspect the package does not diminish all legitimate expectations of privacy from governmental intrusion into packages that have been shipped. See *e.g.*, *United States v. Kelly* (8th Cir. 1976), 529 F.2d 1365.

The State contends that *Chadwick* and *Sanders* are not controlling in the case at bar because once Customs officials lawfully opened the container and searched it, finding contraband, defendant no longer had a reasonable expectation of privacy in the container, relying upon *United States v. Emery* (1st Cir. 1976), 541 F.2d 887, 889-90, *overruled on other grounds by United States v. Miller* (1st Cir. 1980), 636 F.2d 850, 854, *United States v. Washington* (7th Cir. 1978), 586 F.2d 1147, 1154, and *United States v. Garcia* (7th Cir. 1979), 605 F.2d 349, 354, *cert. denied* (1980), 446 U.S. 984, 64 L. Ed. 2d 261, 100 St. Ct. 1835. In both *Emery* and *Washington*, the courts found proper the insertion of electronic tracking devices into packages which were found, after lawful searches by Customs agents, to contain contraband. After the devices were inserted, the packages were delivered to each defendant, and were subsequently seized by officials. The courts did indeed find that the insertion of such devices did not violate defendants' justifiable expectation of privacy in the contraband goods. In neither case, however, was the fact that the package contained contraband said to justify the subsequent search occurring after the contraband was seized from defendants; the searches

at issue in those cases were those which occurred when the beeper devices were inserted. To be noted also, in *Emery*, officials secured a search warrant prior to entering the apartment in which defendants (and the contraband) were quartered and, in *Washington*, a court order had been secured authorizing the placement of the electronic beacon in the package prior to its insertion therein. *Garcia* is similarly inapposite in this context since it concerns a warrantless search of easily movable hand luggage incident to and contemporaneous with a lawful arrest. The State's reliance upon other Federal and State cases considering this issue which predate *Chadwick* and *Sanders* is misplaced in light of the law now established by the latter cases.

The State nevertheless maintains that, given the legitimacy of the original search by Customs agents, the subsequent search of the container at the police station was lawful since the container was the object of a "controlled delivery." Where there is a prior legal search of property, a valid seizure by police officers predicated upon that search, and a delivery to the addressee made under the direction and control of police, a subsequent search which occurs at the termination point of the delivery may be conducted without a warrant as it constitutes a reassertion of possession and is deemed part of the first search and seizure. (*United States v. Bulgier* (7th Cir. 1980), 618 F.2d 472, *cert. denied* (1980), 449 U.S. 843, 66 L. Ed. 2d 51, 101 S. Ct. 125; *United States v. Andrews* (10th Cir. 1980), 618 F.2d 646, *cert. denied* (1980), 449 U.S. 824, 66 L. Ed. 2d 26, 101 S. Ct. 84; *United States v. Ford* (10th Cir. 1975), 525 F.2d 1308; *United States v. DeBerry* (2d Cir. 1973), 487 F.2d 448.) In each of the foregoing cases the facts are similar: a lawful or private search disclosed the presence of contraband in a package about to be shipped to a receiving defendant; State police or Federal agents were called in, who notified police or agents at the package's point of destination; the contents of the package were marked or identified, except in *Bulgier* and *Andrews*; the package was delivered under close surveillance; defendant was arrested shortly after he or she retrieved the package; and the package was thereafter seized and searched. Both *Bulgier* and *Andrews* hold that *Sanders* and *Chadwick* are not applicable in a "controlled delivery" situation, since in neither case was there an initial legitimate search "beyond the commands of the Fourth Amendment." *United States v. Andrews* (10th Cir. 1980), 618 F.2d 646, 651.

The State argues that since the initial airport search in the present case by Customs agents was the functional equivalent of a border search which did not require a warrant or probable cause (*United States v. Ramsey* (1977), 431 U.S. 606, 52 L. Ed. 2d 617, 97 S. Ct. 1972; *United States v. Odland* (7th Cir. 1974), 502 F.2d 148, *cert. denied* (1974), 419 U.S. 1088, 42 L. Ed. 2d 680, 95 S. Ct. 679; *United States v. Washington*),

the seizure of the contraband by agent Labek at the Customs depot was also legitimate. Consequently, the State insists, when defendant was arrested, the police merely reasserted control over the container and were not required to secure a warrant before opening the container at the police station. Assuming the initial search by Customs agents was legitimate, the circumstances of the instant case disclose factual departures from the cases cited by the State. In those cases, except in *Bulgier* and *Andrews*, the contraband was marked,[1] a procedure not followed here. Labek was not present when the table was replaced in the container and the latter was resealed. Further, neither defendant nor his apartment was kept under continuous or close surveillance. Instead of remaining in sight of police prior to his arrest, defendant here had taken the container into his apartment, out of view of authorities. During that same time, neither Labek nor Lipsek remained in the hallway. Instead of retaining dominion and control of the package, as in the "controlled delivery" cases, the authorities here relinquished such control.

■■ Contrary to the State's contention, law enforcement officials were not "absolutely sure" of the contents of the container: Labek could not be absolutely sure of its contents when he delivered it as he was not present when the table was replaced and the container was resealed; he had not marked or otherwise identified it in any way; Lipsek only knew of the container's contents through hearsay; and there is no certainty that the contents of the package were the same before and after the package was brought into defendant's apartment. Given these circumstances, it cannot be said that the officials retained the requisite dominion and control over the container and its contents, which are the essential elements of a controlled delivery. The retrieval of the container in defendant's hallway therefore must be deemed to have constituted a new seizure distinct from the original seizure on February 21. (See *United States v. Edwards* (1st Cir. 1979), 602 F.2d 458, 467, n.9.) The officials may have had probable cause to suspect what was in the container; however, as the United States Supreme Court has held, probable cause alone does not justify its search. *United States v. Chadwick; Arkansas v. Sanders.*

## II

The State next argues that the search at issue was valid as a search of the person and the area within his immediate control incident to a lawful arrest, relying upon *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034, and that such a search, which could have been made at

---

[1] In *Bulgier*, where marking did not occur, the court stated that such identification was not necessary where the container in which the contraband was repackaged was never out of the agent's sight and where it was observed that the defendant had not opened the package up to the moment of arrest. 618 F.2d 472, 474, 478.

the time of arrest, may also be conducted later when the accused arrives at his place of detention. (*United States v. Edwards* (1974), 415 U.S. 800, 803, 39 L. Ed. 2d 771, 775-76, 94 S. Ct. 1234, 1237 (hereinafter *Edwards*); *People v. Campbell* (1977), 67 Ill. 2d 308, 367 N.E.2d 949.) In *Edwards*, which involved the search of clothes worn by the arrestee while in detention, the Supreme Court held that personal effects in the defendant's possession at the place of detention are subject to search without a warrant because of his reduced expectancy of privacy, due to the arrest, as to such items. In *Campbell*, a search was conducted of two of the defendants' nine pieces of luggage as they were placed under arrest, and all nine were searched later at police headquarters. The Illinois Supreme Court upheld the search, noting "searches and seizures that could be made * * * at the time of arrest may legally be conducted later when the accused arrives at the place of detention." (*Campbell*, at 319.) The court also observed that the ultimate test is the reasonableness of the search.

■■ The government in *Chadwick* raised a similar argument, that the search of the defendants' footlocker which took place in the Federal building after defendants were taken into custody was justified as a search incident to an arrest. The Supreme Court rejected that argument, stating that where a search is remote in time or place from the arrest, no exigency exists. When law enforcement officers have reduced the item seized to their exclusive control, thereby eliminating the danger that an arrestee might seize a weapon or destroy evidence, a search of that property is no longer incident to an arrest. (433 U.S. 1, 15, 53 L. Ed. 2d 538, 551, 97 S. Ct. 2476, 2485.) Here also it must be concluded that the officers' search of defendant's container in the police station was no longer incident to his arrest. Having taken control of the container and table upon defendant's arrest, there was no further risk that any evidence or contraband within the container would be destroyed or removed by defendant and no exigent circumstances existed which justified a warrantless search thereof hours later at police headquarters. In footnote 10 of *Chadwick*, the court states, "[u]nlike searches of the person, * * * *United States v. Edwards*, 415 U.S. 800 (1974), searches of possessions within an arrestee's immediate control cannot be justified by any reduced expectations of privacy * * *." (433 U.S. 1, 16 n.10, 53 L. Ed. 2d 538, 551 n.10, 97 S. Ct. 2476, 2486 n.10.) The distinction between the situation described in *Edwards* and that in *Chadwick* was also discussed in *United States v. Berry* (7th Cir. 1977), 560 F.2d 861, *vacated on other grounds* (7th Cir. 1978), 571 F.2d 2, in which the warrantless search of an attache case occurring after the arrest was held improper, following *Chadwick*. The *Berry* court found that by its *Chadwick* decision, the Supreme Court had limited *Edwards* to its own facts. Clearly *Edwards* only applies to personal effects, such as clothing·on the person of the accused, and is not controlling here. To be noted is that *People v. Campbell* was decided

before the Supreme Court opinions in *Chadwick* and *Sanders* were rendered. The trial court properly suppressed the evidence seized from the container and table in the case *sub judice*.

### III

■■ Finally, the State argues that defendant cannot invoke the protection of the Fourth Amendment since the container was abandoned in the hallway. The State contends that Agent Labek had a right to be in the hallway, first, because defendant had invited him there to deliver the package, and second, because the common hallway of a building is not a constitutionally protected area, citing *People v. Carroll* (1973), 12 Ill. App. 3d 869, 876, 299 N.E.2d 134, *cert. denied* (1974), 417 U.S. 972, 41 L. Ed. 2d 1144, 94 S. Ct. 3180. Neither a search nor a seizure was conducted in a common hallway in *Carroll* under circumstances even vaguely analogous to those existing in the present case. It is the privacy interest in the contents of the container, not the privacy interest in the hallway, which is at issue here. As to the former interest, "that expectation of privacy is not diminished simply because the owner's arrest occurs in a public place." *Sanders*, 442 U.S. 753, 766-67, 61 L. Ed. 2d 235, 247, 99 S. Ct. 2586, 2594.

■■ The State also contends that defendant abandoned the container in that he did not take minimal precautions to preserve his privacy rights, citing *People v. Blake* (1981), 93 Ill. App. 3d 538, 417 N.E.2d 682. In *Blake*, the police were found to be justified in searching a bag filled with contraband which was kept in the basement laundry room in an apartment building. The *Blake* court declined to find a reasonable expectation of privacy in that case since the landlord had given permission for the search, the laundry room was not immediately adjacent to the apartment, and the defendant, in storing the contraband in an ordinary paper bag, had failed to make a reasonable attempt to preserve his privacy. The instant case involves a search of a sealed container taken from defendant in a hallway adjacent to his apartment. *Blake* is clearly inapposite. Further, nowhere in the record is it suggested that defendant abandoned the container. To the contrary, Labek described defendant, prior to his arrest, as standing "in the hallway *with* the container." (Emphasis added.) Also, during the State's cross-examination of Labek, counsel referred to the container as being *with* defendant at the time of his arrest, and was not corrected by Labek.

For the foregoing reasons, the trial court's ruling must be affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.