NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210726-U

NO. 4-21-0726

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 20, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| DANTE ANTWAN WEBB, | ) | No. 18CF305 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court held that defendant failed to establish that his counsel
provided ineffective assistance for failing to argue that a positive canine alert for
drugs in defendant's vehicle could not constitute probable cause for a search,
because such an argument would have been meritless. The appellate court further
found that the trial court did not impose an excessive sentence for defendant's
conviction of cannabis trafficking.

¶ 2     Following a bench trial, defendant, Dante Webb, was found guilty of cannabis

trafficking (720 ILCS 550/5.1(a) (West 2018)), possession of cannabis with intent to deliver (720

ILCS 550/5(f) (West 2018)), and possession of cannabis (720 ILCS 550/4(f) (West 2018)). The

court found that possession of cannabis with intent to deliver and possession of cannabis merged

into cannabis trafficking and sentenced defendant to 14 years' imprisonment in the Department

of Corrections. Defendant appeals, arguing that (1) his trial counsel was ineffective in failing to

argue in defendant's motion to suppress that the police did not have probable cause to search his vehicle and (2) the trial court imposed an excessive sentence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        We include only those facts necessary to our disposition of the issues raised by defendant. In March 2018, defendant was charged with cannabis trafficking (720 ILCS 550/5.1(a) (West 2018)) (count I), unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(f) (West 2018)) (count II), unlawful possession of cannabis (720 ILCS 550/4(f) (West 2018)) (count III), unlawful possession of a firearm (430 ILCS 65/2(a)(1) (West 2018)) (count IV), and unlawful possession of firearm ammunition (430 ILCS 65/2(a)(2) (West 2018)) (count V). The charges arose out of events occurring on March 24, 2018, in which the police, during a traffic stop, searched the cab of defendant's tractor trailer and located cannabis and a firearm. Ultimately, the State proceeded only on counts I, II, and III.

¶ 5        Prior to trial, defendant's counsel filed a motion to suppress all evidence obtained in the search of defendant's vehicle and all statements defendant made to the police. The motion alleged, in part, that the police (1) did not have reasonable suspicion to stop his vehicle, (2) improperly prolonged the stop to conduct a canine sniff investigation, and (3) obtained evidence from defendant's vehicle in violation of the fourth amendment. The motion did not allege that a positive canine sniff alert could not constitute probable cause for a search.

¶ 6        A hearing on the motion to suppress was held in October 2020. Defendant testified that he was a truck driver. On March 24, 2018, he was driving a tractor trailer northbound on Interstate 55 in McLean County while pulling a car hauler. Defendant testified that, although he was not violating any laws, he was pulled over by law enforcement. He explained that the police searched his vehicle and arrested him without either a search warrant or

an arrest warrant. Defendant testified that the police seized several items, including two Illinois license plates. On cross-examination, defendant admitted that, at the time of the stop, neither plate was affixed to his vehicle or the trailer he was pulling.

¶ 7 Sergeant Jonathan Albee of the McLean County Sheriff's Office testified for the State. Albee testified that in March 2018, he was a deputy and canine handler assigned to the patrol division. He explained that on March 24, 2018, he was on patrol sitting stationary near mile marker 174 on Interstate 55 when a commercial motor vehicle drove by. The vehicle was a white truck tractor pulling a partially loaded car hauler trailer. Albee testified that the vehicle drew his attention because it had no driver's side markings indicating the company name or a Department of Transportation number, which Albee explained were "required by federal motor carrier regulations." Additionally, Albee thought it was "odd" that the trailer was only partially loaded with cars since he knew that tractor trailers "are expensive to operate." Albee testified that he began to follow the vehicle and noticed that there was no registration displayed anywhere on the trailer. As a result, Albee activated his emergency lights and stopped the vehicle. Albee approached the vehicle on the passenger side and stepped up into the truck to speak with the driver, whom he identified as defendant.

¶ 8 According to Albee, defendant "appeared to be in a state of panic." Albee testified that defendant's movements "were very animated" and that he would stand up and sit back down. Albee testified that, while truck drivers usually have a binder containing a "cab card," vehicle insurance information, and other documents, defendant was very disorganized and provided him with information that he did not request, such as bills for tire repairs. Albee also testified that defendant volunteered that he "had been stopped several times along this trip" and that "the vehicles had been checked for drugs." Albee testified that he thought this was "a bizarre

statement." He explained that defendant handed him an Illinois-apportioned "cab card" which did not match the California license plate displayed on the front of the vehicle. Albee testified that this was "not normal." Defendant also handed Albee a license plate for the trailer, which was registered in Illinois. Albee asked defendant to accompany him to his patrol car. According to Albee, at that time, he believed defendant was involved "in some type of criminal activity" and requested another unit for assistance.

¶ 9        Albee testified that he and defendant sat in the front of his patrol car while he began writing a warning and checking the license plates. Albee explained that Deputy Andrew Erickson arrived as he did so. Erickson "took over my enforcement action" by continuing with the written warning, running defendant's information through several databases, and checking defendant's driver's license. Albee testified that, meanwhile, he performed a free air sniff with his canine partner around defendant's truck. Albee noted that his canine was certified in the detection of narcotics "through the Illinois law enforcement training standards boards *** [and] through the National Police Canine Association in both narcotics and patrol." Albee testified that his canine was trained to detect odors of crack cocaine, methamphetamine, heroin, ecstasy, and marijuana. Albee explained that the canine gave a positive drug alert near the front driver's side of the vehicle. Albee informed defendant that he was going to search the vehicle and asked if there was anything inside that would "startle him." Albee testified that defendant told him that he "had a buddy in there with him." After placing defendant in the back of Erickson's squad car, Albee retrieved the other individual in the truck, Darrell McLain, and placed him in Erickson's squad car with defendant. Albee testified that he then searched defendant's truck and located a gun and cannabis in the sleeper portion of the cab. Thereafter, Albee placed defendant under

- 4 -

arrest and transported him to the McLean County Sheriff's Office, where he was given his *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), and interviewed.

¶ 10        Erickson, a patrol deputy with the McLean County Sheriff's Office, testified that he was called to help Albee with a traffic stop on Interstate 55. Erickson testified that when he arrived at the scene, he took over the enforcement action, which included continuing with the written warning and running checks on defendant, the vehicle, and the trailer. While Erickson did so, Albee conducted a canine sniff around defendant's vehicle. Erickson testified that he learned that there was a positive alert for drugs at the vehicle while he was still completing the enforcement action. Erickson explained that, thereafter, defendant and McLain were placed in the back of his squad car, where he gave them both their *Miranda* warnings.

¶ 11        The trial court suppressed one statement defendant made before he was given his *Miranda* warnings but otherwise denied defendant's motion to suppress. In denying the remainder of the motion, the trial court found, *inter alia*, that Albee had probable cause to stop defendant's vehicle because there was no rear registration plate affixed to the trailer defendant was hauling. See 625 ILCS 5/3-413(a) (West 2018) (stating registration plate issued for a trailer must be attached to the rear thereof). The court also found that the positive canine alert gave the officers probable cause to search defendant's vehicle.

¶ 12        The matter proceeded to a bench trial, and the trial court took judicial notice of Albee's and Erickson's suppression hearing testimony. Thereafter, the State called Albee.

¶ 13        Albee's trial testimony was substantially similar to his suppression hearing testimony. He noted that he stopped defendant's vehicle on March 24, 2018, because there was no registration displayed on the trailer. He explained that, eventually, Erickson arrived to provide assistance. While Erickson took over the traffic stop, Albee performed a free air sniff with his

canine partner, which resulted in a positive alert for drugs at defendant's vehicle. Albee noted that he asked defendant if there was anything in the vehicle that would "startle" him, and defendant informed him that McLain was riding with him. Albee testified that, after securing McLain, he searched defendant's tractor-trailer. He explained that on the bunk in the sleeper portion, he found a plastic bag containing a small container from a marijuana dispensary and a cottage cheese container with a small amount of marijuana in it. Albee testified that, in a closet, he found ten vacuum-sealed bags containing green plant material, which he suspected was cannabis. Albee testified that he took possession of the material and transported it to the sheriff's office for chemical testing. The parties stipulated that the material was 2736 grams of cannabis.

¶ 14　　　　The trial court admitted State's Exhibit 10, a video of defendant's interrogation by Albee and Erickson at the sheriff's department. During the interrogation, defendant told the officers that he was a disabled veteran and used marijuana for pain relief following an ankle injury. He also told the officers that he purchased the cannabis obtained from his vehicle from a producer in Texas who usually sold cannabis to a dispensary. Defendant stated that most of the cannabis was "just for me," but "some of it was probably going to get sold."

¶ 15　　　　Defendant presented no evidence, and following closing arguments, the trial court found defendant guilty of all three counts. The court ultimately determined that counts II and III merged into count I.

¶ 16　　　　The trial court held a sentencing hearing in September 2021. The parties stipulated that the estimated street value of the cannabis was $40,000. The State presented evidence in aggravation that on August 22, 2019, while defendant was on his way to appear in court in the instant case, officers stopped him on Interstate 55 and located 7.8 grams of cocaine and a scale in his car.

¶ 17        The presentence investigation report (PSI) showed that defendant's criminal record included, *inter alia*, 2005 convictions in Indiana of two counts of robbery and two counts of criminal confinement, resulting in a six-year prison sentence. The PSI further disclosed that while defendant had been on bond in the instant case, he had (1) been charged in Livingston County with several offenses stemming from the August 22, 2019, traffic stop, (2) received a traffic violation in Indiana, (3) been charged with retail theft in Lake County, and (4) been charged with theft of services in Wisconsin. The PSI noted that defendant earned an honorable discharge after serving in the United States Army and worked as a truck driver since approximately 2011. The PSI further indicated that defendant was in a relationship with his girlfriend, with whom he had a daughter, and provided financial support to them.

¶ 18        The State argued that defendant should receive a 15-year sentence, noting that although defendant did not sell any of the cannabis, he nevertheless stood to profit given the nature of the offense of trafficking. The State also emphasized that defendant's prior criminal history was aggravating and noted that defendant had "picked up several new cases" while he was out on bond. The State asserted that a 15-year sentence was necessary to deter others and so as not to deprecate the seriousness of the offense.

¶ 19        Defendant's counsel responded that defendant should be sentenced to the minimum sentence of eight years. Counsel argued that the court should not consider the pending charges in Livingston County, because punishment based on those acts in the instant case risked a double enhancement if he was later sentenced for those offenses in the Livingston County case. While counsel acknowledged defendant's prior six-year prison sentence in Indiana, he argued that going "from six years to 15 years later, a 15-year sentence *** is too much of an increase" and noted that defendant was a veteran. Defendant, in allocation, emphasized that he had held a

commercial driver's license (CDL) since he was 21 years old. He explained that he owned a trucking company, worked diligently as a truck driver, and would "continue to be an outstanding member of society." Defendant noted that he was a family man who went to church and paid for his daughter to go to a private school. He further stated that he was a disabled veteran, only had about five pounds of cannabis, and obtained the cannabis only for personal use to alleviate pain.

¶ 20     The trial court stated that it had considered the PSI, exhibits, arguments, defendant's statement in allocution, and all statutory factors in aggravation and mitigation. The court noted that it would not consider the pending Livingston County charges due to the potential sentencing issue raised by defendant's counsel. The court considered defendant's prior felony convictions and noted that the remainder of defendant's record was "relatively minor." Further, the court noted that defendant "has provided for his family and doesn't seem to have a[n] extensive substance abuse history." However, the court explained that a community-based sentence would not be an "appropriate sentence in this case," as it "would deprecate the seriousness of the defendant's conduct and be inconsistent with the ends of justice." The court stated that "a sentence to the Illinois Department of Corrections is necessary for the protection of the public" and sentenced defendant to 14 years' imprisonment.

¶ 21     The court denied defendant's subsequent motion to reconsider the sentence. This appeal followed.

¶ 22                     II. ANALYSIS

¶ 23                 A. Ineffective Assistance of Counsel

¶ 24     Defendant argues that his trial counsel was ineffective for failing to argue in the motion to suppress that the police did not have probable cause to search his vehicle. Specifically, defendant contends that the positive canine alert for drugs, without more, could not have

- 8 -

constituted probable cause for the search of his vehicle, because the legislature decriminalized the possession of less than 10 grams of cannabis in 2016 (720 ILCS 550/4(a) (West 2016)). The State responds that such an argument would have been meritless because the positive alert justified the search.

¶ 25 To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that such deficient performance so prejudiced the defendant as to deny him or her a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). A defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-88, 694. To prove prejudice when claiming that counsel was ineffective for failing to move to suppress evidence, a defendant must establish that the unargued suppression motion was meritorious and that there is a reasonable probability that the verdict would have been different without the excludable evidence. *People v. Eubanks*, 2021 IL 126271, ¶ 30.

¶ 26 All individuals enjoy the right to be free from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Generally, a search is *per se* unreasonable if it is conducted without a warrant supported by probable cause and approved by a judge or magistrate. *People v. Hill*, 2020 IL 124595, ¶ 20. An exception to this general rule is recognized for searches of automobiles, given the impracticability of securing a warrant before an automobile escapes the jurisdiction in which the warrant must be sought. *Hill*, 2020 IL 124595, ¶ 21. However, even under the automobile exception, officers must still have probable cause to search a vehicle. *Hill*, 2020 IL 124595, ¶ 22.

¶ 27 Probable cause is established when the "totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that the automobile contains contraband or evidence of criminal activity." *Hill*, 2020 IL 124595, ¶ 23. Probable cause deals with probabilities as opposed to certainties and is a flexible, commonsense standard that does not require a showing that a particular belief is correct or more likely true than false. *Hill*, 2020 IL 124595, ¶ 24. Accordingly, to establish probable cause, an officer need not rule out any innocent explanations for suspicious facts. *Hill*, 2020 IL 124595, ¶ 24. Rather, the facts available to the officer, including the plausibility of an innocent explanation, need only warrant a reasonable person to believe that there is a reasonable probability that certain items might be contraband or useful as evidence of a crime. *Hill*, 2020 IL 124595, ¶ 24.

¶ 28 Defendant argues that the positive canine alert could not constitute probable cause for the search of his vehicle, because Illinois decriminalized possession of cannabis under 10 grams in 2016. See 720 ILCS 550/4(a) (West 2016). Seizing on *Hill*'s statement that such decriminalization "somewhat altered the status of cannabis as contraband" (*Hill*, 2020 IL 124595, ¶ 26), defendant contends that "all adult Illinoisans" were "allowed to possess" less than 10 grams of cannabis. He argues, therefore, that because the alert indicated only that his vehicle might have contained a substance that he was allowed to possess, the alert alone "was simply not enough in 2018 to provide probable cause to justify a search."

¶ 29 In 2014, the legislature legalized the possession of cannabis for individuals who had been granted a license to use it for medical purposes. See 410 ILCS 130/1 *et seq*. (West 2014). Thereafter, in 2016, the legislature passed a law stating that a licensed user of medical cannabis "shall not be considered an unlawful user" and that medical cannabis "purchased by a qualifying patient at a licensed dispensing organization shall be lawful products." 410 ILCS

130/7 (West 2016). Also in 2016, the legislature decriminalized the possession of no more than 10 grams of cannabis and categorized such possession as a civil law violation punishable by only a fine. See 720 ILCS 550/4(a) (West 2016).

¶ 30 In *Hill*, 2020 IL 124595, the Illinois Supreme Court considered whether the search of a defendant's vehicle was justified in light of the foregoing amendments. In *Hill*, the defendant filed a motion to suppress evidence of cocaine obtained pursuant to a search of his vehicle. *Hill*, 2020 IL 124595, ¶ 4. At the hearing on the motion to suppress, evidence was presented that, after the arresting officer activated his emergency lights to stop the defendant's vehicle, the defendant continued driving for several blocks, which, based on the officer's experience, typically meant the occupants were concealing contraband. *Hill*, 2020 IL 124595, ¶ 5. Once the vehicle stopped, the officer approached it, smelled cannabis, and observed a bud of cannabis on the back seat. *Hill*, 2020 IL 124595, ¶¶ 5, 7, 9, 10. The officer then searched the vehicle and found cannabis and a rock of crack cocaine. *Hill*, 2020 IL 124595, ¶ 7. Although the trial court granted the motion to suppress, this court reversed. *Hill*, 2020 IL 124595, ¶¶ 11, 12.

¶ 31 The defendant appealed to the supreme court, arguing that because the possession of small amounts of cannabis was decriminalized, such possession was no longer criminal activity and cannabis was no longer contraband. *Hill*, 2020 IL 124595, ¶ 25. The defendant asserted that, without more facts to establish that he illegally possessed a criminal amount of cannabis or that a crime was committed, the officer lacked probable cause for the search. *Hill*, 2020 IL 124595, ¶ 25.

¶ 32 In addressing the defendant's argument, the court first distinguished *People v. Stout*, 106 Ill. 2d 77 (1985), which held that the odor of burnt cannabis alone provides probable cause to search a vehicle, because the officer in *Hill* relied on more than the mere odor of

cannabis to justify the search. *Hill*, 2020 IL 124595, ¶¶ 15-16. Specifically, the officer also relied on (1) his experience that when a vehicle delays pulling over, its occupants are often hiding contraband and (2) his observing a bud of cannabis on the back seat. *Hill*, 2020 IL 124595, ¶¶ 16-17.

¶ 33    Thereafter, the court held that the officer had probable cause for the search of the defendant's vehicle. *Hill*, 2020 IL 124595, ¶ 26. The court rejected the defendant's decriminalization argument as "fatally flawed." *Hill*, 2020 IL 124595, ¶ 31. The court explained that the automobile exception to the warrant requirement equates "contraband" with illegality as opposed to unlawful acts subject to criminal penalties. *Hill*, 2020 IL 124595, ¶ 28. As such, whether an item is contraband is determined by whether the legislature prohibits possession of the item, not whether a defendant would be subject to criminal penalties for having it. *Hill*, 2020 IL 124595, ¶ 29. The court explained that, therefore, "[w]hile the decriminalization of cannabis diminished the penalty for possession of no more than 10 grams of cannabis to a civil law violation punishable by a fine, possession of cannabis remained illegal," and the decriminalization "did not alter the status of cannabis as contraband." *Hill*, 2020 IL 124595, ¶ 31.

¶ 34    The court, however, acknowledged that the Compassionate Use of Medical Cannabis Pilot Program Act (Act) (410 ILCS 130/1 *et seq.* (West 2016)) "somewhat altered the status of cannabis as contraband" in that "possession of cannabis is not contraband for medical users." *Hill*, 2020 IL 124595, ¶¶ 26, 32. Even so, the court explained that, while the mere presence of cannabis for medical users may not necessarily amount to criminal activity or possession of contraband, such users must still possess and use cannabis in accordance with the Act, which includes possessing cannabis in a motor vehicle only when it is in a " 'sealed,

tamper-evident medical cannabis container.' " *Hill*, 2020 IL 124595, ¶ 34 (quoting 625 ILCS 5/11-502.1(b), (c) (West 2016)). The court concluded that, even if the officer presumed that the defendant could legally possess the cannabis, there was probable cause that cannabis in the vehicle was not properly contained, in violation of the Act, given evidence that the officer believed the defendant may have been concealing contraband before the stop, smelled cannabis near the vehicle, and saw a loose bud of cannabis in the back seat. *Hill*, 2020 IL 124595, ¶ 35.

¶ 35          Contrary to defendant's argument, "all adult Illinoisans" were not "allowed to possess" less than 10 grams of cannabis after the legislature decriminalized such possession. "Decriminalization" is not synonymous with "legalization." *In re O.S.*, 2018 IL App (1st) 171765, ¶ 29. Thus, as the supreme court clarified in *Hill*, even after the legislature decriminalized the possession of small amounts of cannabis, the substance continued to be contraband, and its possession remained illegal. *Hill*, 2020 IL 124595, ¶ 31.

¶ 36          Defendant nevertheless argues that probable cause was lacking in this case. He contends that *Hill* is distinguishable, as are *People v. Rowell*, 2021 IL App (4th) 180819, ¶ 31, and *People v. Sims*, 2022 IL App (2d) 200391, ¶ 93, which both held that, despite the decriminalization of the possession of small amounts of cannabis, probable cause to search the defendants' vehicles existed where the officers smelled cannabis emanating from them. Defendant contends that here, unlike *Hill*, *Rowell*, and *Sims*, there was no evidence that Albee or Erickson smelled cannabis and nothing else "pointed to illegal drug possession." This argument is unavailing because even without evidence that Albee or Erickson smelled cannabis, there was evidence pointing to illegal drug possession.

¶ 37          Defendant disregards that a positive canine alert for contraband constitutes probable cause to search a vehicle. See *People v. Campbell*, 67 Ill. 2d 308, 315-16 (1977) ("It is

- 13 -

clear that the detection of narcotics by police smelling the odor is a permissible method of establishing probable cause [citations], and we see no significant difference in the use of dogs under identical circumstances."); *People v. Thomas*, 2018 IL App (4th) 170440, ¶ 74 ("If a dog smells drugs in a vehicle, the police have probable cause to search the vehicle."). At the hearing on the motion to suppress, Albee testified that his canine partner was certified in the detection of narcotics and, in addition to marijuana, was trained to detect crack cocaine, methamphetamine, heroin, and ecstasy. Like cannabis, it is illegal to possess any of those substances. 720 ILCS 570/402(a)(2) (West 2016) (cocaine); 720 ILCS 646/60(a) (West 2016) (methamphetamine); 720 ILCS 570/402(a)(1) (West 2016) (heroin); 720 ILCS 570/402(a)(7.5) (West 2016) (ecstasy). Because Albee's canine alerted to the presence of at least one of the foregoing illegal substances, probable cause existed for the search of defendant's vehicle. Thus, we conclude that, had counsel argued in the motion to suppress that the canine alert did not constitute probable cause, that argument would have been meritless. Defendant, therefore, cannot show that he was prejudiced by counsel's failure to raise that argument. Accordingly, we hold that defendant's claim of ineffective assistance of counsel fails.

¶ 38                                    B. Excessive Sentence

¶ 39            Next, defendant argues that the trial court abused its discretion in sentencing him to 14 years' imprisonment. He contends that he should have received the minimum sentence of eight years because the amount of cannabis he was transporting was "barely more than the minimum" to constitute cannabis trafficking. He further argues that the trial court's sentence failed to reflect his "high potential for rehabilitation."

¶ 40            When the trial court's sentencing decision is within the statutory range for the offense, it will not be disturbed absent an abuse of discretion. *People v. Aquisto*, 2022 IL App

(4th) 200081, ¶ 111. A sentence constitutes an abuse of discretion where it is greatly at variance with the spirit and purpose of the law or where it is manifestly disproportionate to the nature of the offense. *Aquisto*, 2022 IL App (4th) 200081, ¶ 111. In determining what sentence to impose, the trial court may consider (1) the defendant's history, character and rehabilitative potential, (2) the seriousness of the offense, (3) the need to protect society, and (4) the need for punishment and deterrence. *People v. Klein*, 2022 IL App (4th) 200599, ¶ 34. The seriousness of the offense is the most important sentencing factor, and the trial court need not give greater weight to rehabilitation or mitigating factors than to the severity of the offense. *Aquisto*, 2022 IL App (4th) 200081, ¶ 112. We may not substitute our judgment for that of the trial court merely because we might have weighed a factor differently. *Klein*, 2022 IL App (4th) 200599, ¶ 37. We presume that a sentence imposed within the statutory range is proper. *Klein*, 2022 IL App (4th) 200599, ¶ 37.

¶ 41    Defendant was convicted of cannabis trafficking involving more than 2000 grams but not more than 5000 grams, which carries a prison term of between 8 and 30 years. 720 ILCS 550/5.1(b), 5(f) (West 2018); 730 ILCS 5/5-4.5-30(a) (West 2018). The trial court sentenced defendant to 14 years of imprisonment. This sentence was within the statutory limits for the offense.

¶ 42    Defendant's argument that the trial court should have sentenced him to the minimum sentence—eight years—because the offense was not serious and because he is likely to be rehabilitated is unavailing. The court considered these factors at sentencing. Defendant's counsel argued that defendant was a veteran and that eight years was an appropriate sentence. Defendant stated to the court that he held a CDL since he was 21 years old, owned a trucking company, and worked diligently as a truck driver. He further stated that he was a family man

who went to church, paid for his daughter to go to a private school, and obtained the cannabis—which he claimed amounted to only about five pounds—only for personal use to alleviate pain. The trial court explained that it considered the PSI, the parties' arguments, defendant's statement in allocution, and all statutory factors. Although the trial court acknowledged that defendant "does provide for his family" and that much of defendant's criminal record was "relatively minor," the court noted that defendant's record included prior convictions of robbery and criminal confinement, resulting in a six-year prison sentence. Thereafter, the trial court explained that imposition of a 14-year sentence was appropriate given the "seriousness of the defendant's conduct" and was "necessary for the protection of the public." Defendant, in effect, argues that the trial court should have weighed the mitigating factors presented to the trial court differently. However, the trial court did consider them and gave more weight to the seriousness of the offense and the need to protect the public. This was proper. We see no abuse of discretion in the trial court's assessment of the proper sentence to impose. Accordingly, we will not disturb the trial court's imposition of a 14-year sentence.

¶ 43                                    III. CONCLUSION

¶ 44           For the reasons stated, we affirm defendant's conviction and sentence for cannabis trafficking.

¶ 45           Affirmed.