2023 IL App (4th) 220528

NO. 4-22-0528

FILED
April 25, 2023
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Henry County |
| AMY J. MALLERY, | ) | No. 21CF266 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Terence M. Patton, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Turner and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1        Following a traffic stop and vehicle search, the State charged defendant, Amy J.

Mallery, with possession of methamphetamine (720 ILCS 646/60(a), (b)(1) (West 2020)).

Defendant filed a motion to suppress the evidence against her based on a lack of probable cause

for the vehicle search. The trial court granted the motion and the State appeals. We reverse and

remand for further proceedings.

¶ 2                                I. BACKGROUND

¶ 3        In January 2021, Kewanee police officer Eric Peed conducted a traffic stop of a

vehicle being driven by defendant. During the stop, Peed used his police canine to perform a

free-air sniff of the vehicle. The canine had a positive alert, and Peed searched the vehicle. In July

2021, the State charged defendant with possession of less than five grams of methamphetamine

(*id.*) based upon the results of that search.

¶ 4          In April 2022, defendant filed a motion to suppress evidence, arguing the vehicle search was unlawful because it was conducted without probable cause. Specifically, she asserted that because Peed's canine was trained to alert to the odor of cannabis and cannabis is now a legal substance in Illinois, its odor alone is not indicative of unlawful activity. Defendant maintained a police canine that is trained to detect a legal substance is "unreliable" and, thus, its positive alert cannot provide probable cause for a search. Further, defendant argued that cannabis should now be treated similarly to alcohol, asserting that probable cause for a vehicle search may not be based solely upon an officer's detection of the smell of alcohol.

¶ 5          In May 2022, the State filed a written response to defendant's motion. It argued the "reliability" of Peed's canine was established because the canine "satisfactorily completed a certification and training program by an accredited training facility." The State also pointed out that Illinois Supreme Court case authority has held that probable cause for a vehicle search exists based upon the odor of cannabis alone and that such case authority has not been revised or overruled. Further, it argued that cannabis is not legal in all circumstances. The State asserted that in Illinois, a person "can only lawfully possess certain amounts of cannabis under limited circumstances" and that cannabis may not be possessed in a motor vehicle unless it is in an "odor-proof" container.

¶ 6          On May 26, 2022, the trial court conducted a hearing on defendant's motion. Officer Peed was the only witness to testify at the hearing. He stated that one of his responsibilities as a police officer was to conduct free-air sniffs with a police canine named Rosco. According to Peed, Rosco was trained to detect five substances—cocaine, crack cocaine, heroin, methamphetamine, and cannabis. Rosco's alerts were the same for each individual substance and

Peed acknowledged that Rosco "could indicate to residual odors" from the five substances when they were no longer present at the location being searched.

¶ 7            In January 2021, Peed conducted the underlying traffic stop after observing the vehicle at issue with a broken taillight and failing to signal at an intersection. The vehicle had three occupants, and defendant was its driver. During the stop, Peed decided to conduct a free-air sniff with Rosco because he "had previous knowledge of the defendant and the other occupants of the vehicle and drug use." Rosco had a positive alert on the vehicle at the location of the passenger's side front door. Because Rosco alerted, Peed searched the vehicle. During the search, he located a bag at defendant's feet, which contained "a green, metal pipe, that's typically used to smoke cannabis with some burnt residue in the end of it, a digital scale, and two metal spoons that had a white residue on top of them." The white residue was determined to be methamphetamine, but the substance in the metal pipe was never tested.

¶ 8            Peed testified he received Rosco in October 2015, and they "trained through January 2016." He stated Rosco was certified by an accredited training facility and since January 2016, their training was maintained on a monthly basis. The monthly training involved meeting with other canine handlers at different locations and hiding narcotic substances along with "distracting odors." Peed stated the dogs would then be "taken through those areas to confirm that they [were] alerting to the narcotics and not" the other odors. Peed also conducted his own research to "stay on top of the law." He testified that to lawfully transport cannabis in a motor vehicle, the cannabis must be "inside of a sealed tamper-evident, odor-proof container."

¶ 9            Despite changes in the law regarding cannabis, there had not been changes with respect to Rosco's training. Peed testified the cannabis used for training was packaged the same way it had been since he began training with Rosco in 2015, and Rosco's training did not involve

the use of any odor-proof containers. Peed stated he was familiar with "sealed containers that come from a dispensary that are supposed to be odor-proof." He noted that he had located such containers "on traffic stops where Rosco ha[d] been deployed." However, during such stops, "open cannabis" was also always present. Peed stated there had never been an occasion when Rosco alerted on a vehicle and the only thing "found was a sealed, odor-proof container" with cannabis. Additionally, Peed testified that, from his training, he had experience encountering the odor of cannabis, including raw or burnt cannabis. When interacting "with the vehicle" at issue during the underlying traffic stop, he did not smell the odor of cannabis.

¶ 10  Following Peed's testimony, the parties presented arguments to the trial court that were consistent with their written filings. Ultimately, the court granted defendant's motion to suppress. In setting forth its decision, the court found the articulated basis for finding that a canine's positive alert is probable cause for a search has been that such an alert "only reveals contraband, it's only revealing things that are illegal to have under any circumstances." It concluded that cannabis no longer fit into such a category because "cannabis is not always contraband." The court analogized the use of a cannabis-detecting canine to the use of a thermal imaging camera, which it noted had been "ruled unconstitutional, because it reveals things other than illegal activity." It held as follows:

> "So under the reasoning behind the case law that's saying that it's probable cause, since the dogs now, through no fault of their own, can detect innocent activity, I don't see how that's distinguishable from a thermal imaging camera. So I'm going to find that under the case law that defendant has met their burden of proof and that it's not probable cause for a search, since it was based solely on the [canine] search."

- 4 -

¶ 11    Shortly after the trial court granted defendant's motion to suppress, the State filed a certificate of impairment, asserting the court's grant of defendant's motion to suppress substantially impaired its ability to prosecute the case.

¶ 12    This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, the State challenges the trial court's grant of defendant's motion to suppress evidence. It argues defendant failed to meet her burden for the suppression of evidence and the court's determination was based on an erroneous application of Illinois law. The State maintains that a positive alert by a police canine is sufficient probable cause for a warrantless vehicle search. It contends case authority supporting that proposition remains good law despite recent changes to the laws regarding cannabis. Further, the State points out that although cannabis may be legal to possess in some instances, its possession and use remains prohibited in others. In particular, the State notes provisions of the Illinois Vehicle Code, which require cannabis to be inside "a sealed, odor-proof, and child-resistant" container when inside a motor vehicle. 625 ILCS 5/11-502.1, 11-502.15 (West 2020).

¶ 15    Defendant responds by arguing that recent changes to the law, including the passage of the Cannabis Regulation and Tax Act (Pub. Act 101-27 (eff. June 25, 2019) (adding 410 ILCS 705/1-1 *et seq.*)), have made the possession and use of cannabis "explicitly legal" and, thus, no longer contraband. She contends that "[c]hanging the status of cannabis from always illegal to explicitly legal and sometimes illegal based on the circumstances" must "necessarily change[ ] the treatment of the odor of cannabis alone" with respect to the probable cause analysis. Defendant asserts that because a canine trained to detect the odor of cannabis could be alerting to an odor stemming from legal behavior, the odor of cannabis, alone, may not be deemed sufficient probable

cause for a vehicle search.

¶ 16                                    A. Motions to Suppress

¶ 17            "When a defendant files a motion to suppress evidence, he bears the burden of proof at a hearing on that motion." *People v. Brooks*, 2017 IL 121413, ¶ 22, 104 N.E.3d 417. "A defendant must make a *prima facie* case that the evidence was obtained by an illegal search or seizure." *Id.* "A *prima facie* showing means that the defendant has the primary responsibility for establishing the factual and legal bases for the motion to suppress." *Id.* "If a defendant makes a *prima facie* case, the burden shifts to the State to present evidence to counter the defendant's *prima facie* case." *Id.* "However, the ultimate burden of proof remains with the defendant." *Id.*

¶ 18            "A trial court's decision on a motion to suppress is reviewed under a two-part standard." *People v. Salamon*, 2022 IL 125722, ¶ 75, 202 N.E.3d 283. "Factual findings by the trial court will be reversed only if they are against the manifest weight of the evidence, but the ultimate legal determination as to whether suppression is warranted is reviewed *de novo*." *Id.*

¶ 19                                B. Warrantless Vehicle Searches

¶ 20            Here, defendant sought the suppression of evidence based on a claim that the underlying vehicle search was unlawful. Both our federal and state constitutions protect against unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; see *People v. Timmsen*, 2016 IL 118181, ¶ 9, 50 N.E.3d 1092 ("The fourth amendment to the United States Constitution, which applies to the states under the fourteenth amendment, and article I, section 6, of the Illinois Constitution protect people against unreasonable searches and seizures."). "Generally, a search is *per se* unreasonable if conducted without a warrant supported by probable cause and approved by a judge or magistrate." *People v. Hill*, 2020 IL 124595, ¶ 20, 162 N.E.3d 260. However, there are recognized exceptions to the general rule, including one for automobile

searches. *Id.* ¶ 21. The rationale for such an exception is that the "transient nature" of an automobile "often renders it impracticable to secure a warrant before the automobile escapes the jurisdiction in which the warrant must be sought." *Id.* "Therefore, a warrantless search of an automobile is not *per se* unreasonable." *Id.*

¶ 21    Although a police officer may search a vehicle without a warrant, the officer's search must still be supported by probable cause. *Id.* ¶ 22. "To establish probable cause, it must be shown that the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that the automobile contains contraband or evidence of criminal activity." *Id.* ¶ 23. "Probable cause deals with probabilities, not certainties" and "[i]t is a flexible, commonsense standard that does not demand any showing that such a belief be correct or more likely true than false." (Internal quotation marks omitted.) *Id.* ¶ 24. Also, "probable cause does not require an officer to rule out any innocent explanations for suspicious facts." *Id.* "Instead, it requires only that the facts available to the officer—including the plausibility of an innocent explanation—would warrant a reasonable man to believe there is a reasonable probability that certain items may be contraband or stolen property or useful as evidence of a crime." (Internal quotation marks omitted.) *Id.*

¶ 22    Significantly, in *People v. Stout*, 106 Ill. 2d 77, 87-88, 477 N.E.2d 498, 502-03 (1985), the supreme court held that a police officer's detection of the odor of cannabis from the defendant's vehicle, without any additional corroboration, was "a permissible method of establishing probable cause" for a warrantless search. A police canine's detection of the odor of narcotics has received the same treatment. See *People v. Campbell*, 67 Ill. 2d 308, 315-16, 367 N.E.2d 949, 953 (1977) ("It is clear that the detection of narcotics by police smelling the odor is a permissible method of establishing probable cause [citations], and we see no significant difference

in the use of dogs under identical circumstances."); *People v. Staley*, 334 Ill. App. 3d 358, 367, 778 N.E.2d 362, 369 (2002) ("[T]he detection of narcotics by a trained dog is a permissible method of establishing probable cause."); *People v. Neuberger*, 2011 IL App (2d) 100379, ¶¶ 9-10, 959 N.E.2d 195 (stating a canine's "alert supplied probable cause to search the vehicle in which [the] defendant had been traveling" and finding "no reason to reach a different result *** merely because the presence of drugs was detected via canine, rather than human, olfaction"); *People v. Reedy*, 2015 IL App (3d) 130955, ¶ 46, 39 N.E.3d 318 ("An alert by a trained narcotics canine to the presence of narcotics inside a vehicle creates probable cause to search that vehicle."); *People v. Thomas*, 2018 IL App (4th) 170440, ¶ 74, 115 N.E.3d 325 ("If a dog smells drugs in a vehicle, the police have probable cause to search the vehicle ***.").

¶ 23        C. Changes in Illinois Cannabis Law and Subsequent Case Authority

¶ 24        As both parties acknowledge, Illinois law as it relates to the possession and use of cannabis has rapidly changed in recent years. Prior decisions of this court have set forth a brief history of those changes:

> "In 2014, the State of Illinois legalized the possession of cannabis for people to whom the State had granted a license to use cannabis for medical purposes. See 410 ILCS 130/1 *et seq.* (West 2014). In 2016, the State of Illinois passed a law stating that a licensed user of medical cannabis 'shall not be considered an unlawful user' and that medical cannabis 'purchased by a qualifying patient at a licensed dispensing organization shall be lawful products.' 410 ILCS 130/7 (West 2016). Also in 2016, the State of Illinois decriminalized the possession of less than 10 grams of cannabis and defined possession of less than 10 grams as a 'civil law violation.' 720 ILCS 550/4(a) (West 2016)." *People v. Rowell*, 2021 IL App (4th)

180819, ¶ 25, 182 N.E.3d 806.

Additionally, more recent changes include the following:

> "In June 2019, the State of Illinois legalized the possession of small amounts of cannabis for recreational use through the Cannabis Regulation and Tax Act (Pub. Act 101-27 (eff. June 25, 2019) (adding 410 ILCS 705/1-1 *et seq.*)), allowing, among other things, recreational cannabis to be transported in a private vehicle if it 'is in a reasonably secured, sealed container and reasonably inaccessible while the vehicle is moving' (410 ILCS 705/10-35(a)(2)(D) (West 2020)). At the same time, the legislature amended section 11-502.1 and added section 11-502.15 of the Vehicle Code to allow drivers and passengers to transport medical and recreational cannabis if it is placed 'in a sealed, *odor-proof, and child-resistant*' cannabis container. (Emphasis added.) 625 ILCS 5/11-502.1 (West 2020) (amended by Pub. Act 101-27, § 900-38 (eff. June 25, 2019)); *id.* § 11-502.15 (added by Pub. Act 101-27, § 900-38 (eff. June 25, 2019))." *People v. Molina*, 2022 IL App (4th) 220152, ¶ 19.

¶ 25 Following the 2014 and 2016 changes that legalized medical cannabis and decriminalized small amounts of cannabis, the Illinois Supreme Court was asked to overrule its prior holding in *Stout*—that the odor of burnt cannabis alone provided an officer with probable cause to search a vehicle. *Hill*, 2020 IL 124595, ¶ 15. The court declined to do so, finding it unnecessary to address that "narrow legal issue" where the officer in the case before it considered more than just the odor of cannabis before conducting the warrantless vehicle search at issue. *Id.* ¶¶ 15-18. The court went on to hold that probable cause for the search existed in that case based on the defendant's delay in pulling over for the traffic stop, the passenger's revelation that he

smoked cannabis and did so earlier in the day, the officer's observation of "a loose 'bud' in the backseat," and the officer smelling the strong odor of cannabis. *Id.* ¶ 35.

¶ 26　　　　In reaching its decision in *Hill*, the supreme court rejected the defendant's argument that decriminalizing certain amounts of cannabis and legalizing medical cannabis meant that the possession of a small amount of cannabis was no longer a criminal activity and not contraband. *Id.* ¶ 25. The court stated that contraband "encompasses all items that are unlawful to possess, regardless of the accompanying penalty." *Id.* ¶ 30. It noted that "[w]hile the decriminalization of cannabis diminished the penalty for possession of no more than 10 grams of cannabis to a civil law violation punishable by a fine, possession of cannabis remained illegal." *Id.* ¶ 31. Thus, it held that "the decriminalization of possessing small amounts of cannabis did not alter the status of cannabis as contraband." *Id.*

¶ 27　　　　The supreme court did agree that the legalization of medical cannabis supported the "defendant's argument that cannabis [was] no longer contraband in every circumstance." *Id.* ¶ 32. It stated that "[b]ecause medical users are capable of legally possessing cannabis, *** possession of cannabis is not contraband for medical users." *Id.* Nevertheless, it rejected the defendant's argument that "because cannabis may legally be owned in some circumstances, the officers [in the underlying case] needed more facts to suggest the cannabis was illegally owned or connected to another criminal activity." *Id.* ¶ 33. It noted as follows:

　　　　　　"While the mere presence of cannabis for medical users may no longer be immediately attributable to criminal activity or possession of contraband, such users must possess and use cannabis in accordance with the [law]. Notably, *** the Illinois Vehicle Code prohibits any driver or passenger, who is a medical cannabis cardholder, from possessing cannabis within an area of the motor vehicle 'except

- 10 -

in a sealed, tamper-evident medical cannabis container.' " *Id.* ¶ 34 (quoting 625 ILCS 5/11-502.1(b), (c) (West 2016)). The court held that together, the facts in the case before it indicated "that cannabis was in the car and, likely, not properly contained," establishing "probable cause that evidence of a crime was in the vehicle." *Id.* ¶ 35.

¶ 28 Shortly thereafter, this court held that following *Hill*, "*Stout* remains good law and binding precedent." *Rowell*, 2021 IL App (4th) 180819, ¶ 26. In *Rowell*, we stated as follows:

"In this case, we must follow the lead of the Illinois Supreme Court. It is important to recognize that the Illinois Supreme Court earlier this very year declined in *Hill* to overrule *Stout*. [Citation.] The *Hill* decision demonstrates that the holding in *Stout*—namely, that the scent of cannabis alone provides probable cause for a search—was in force in 2017 at the time of the search in this case." *Id.* ¶ 28.

More recent decisions of this court have continued to affirm *Rowell's* holding that *Stout* continues to be good law, even subsequent to the passage of laws in 2019 that legalized cannabis for recreational use. See *Molina*, 2022 IL App (4th) 220152, ¶ 52; *People v. Hall*, 2023 IL App (4th) 220209, ¶ 27.

¶ 29 In *Molina*, 2022 IL App (4th) 220152, ¶ 4, the defendant was charged in December 2020 with unlawful possession of cannabis by a passenger in a motor vehicle after a traffic stop. See 625 ILCS 5/11-502.15(c) (2020) ("No passenger may possess cannabis within any passenger area of any motor vehicle upon a highway in this State except in a sealed, odor-proof, child-resistant cannabis container."). The facts in that case showed the police officer conducting the stop "smelled the strong odor of raw cannabis" when he approached the passenger side of the vehicle.

*Molina*, 2022 IL App (4th) 220152, ¶ 5. He then searched the vehicle "[b]ased solely on that smell" and discovered the cannabis that formed the basis for the charged offense. *Id.* The defendant sought the suppression of evidence, arguing that recent changes to the law, including the passage of the Cannabis Regulation and Tax Act in 2019, "rendered the smell of raw cannabis on its own insufficient to constitute probable cause." *Id.* ¶ 6. The trial court granted the defendant's motion to suppress, and the State appealed. *Id.* ¶¶ 7-10.

¶ 30    On review, this court reversed the trial court's decision and remanded for further proceedings. *Id.* ¶ 59. In doing so, we rejected the defendant's arguments that (1) *Stout* and *Rowell* were "inapplicable to post-legalization of cannabis factual scenarios," and (2) "the 2019 enactments so changed the legal landscape that the mere smell of cannabis no longer provides probable cause to suspect the presence of contraband." *Id.* ¶¶ 24-25. We pointed out just because cannabis could be legally possessed in some amounts and under specified conditions did "not mean that all forms of possession are presumed to be legal." *Id.* ¶ 41. We stated that "[r]egardless of recent changes in the law legalizing possession of small amounts of cannabis, there are still, among other things, (1) illegal ways to transport it, (2) illegal places to consume it, and (3) illegal amounts of it to possess." *Id.* ¶ 43.

> "Accordingly, an officer who smells cannabis in a vehicle he has just stopped is almost certain to discover a violation of the Vehicle Code because the law clearly states that when cannabis is transported in a private vehicle, the cannabis must be stored in a *sealed, odor-proof* container—in other words, the cannabis should be undetectable by smell by a police officer." (Emphasis in original.) *Id.* ¶ 44 (citing 625 ILCS 5/11-502.15 (West 2020)).

¶ 31    In *Molina*, we also emphasized the supreme court's statement in *Hill* that

- 12 -

" 'probable cause does not require an officer to rule out any innocent explanations for suspicious facts.' " *Id.* ¶ 48 (quoting *Hill*, 2020 IL 124595, ¶ 24). Further, we rejected the defendant's argument that changes in cannabis law required it to now be treated in the same manner as alcohol, noting "[a]lcohol is regulated differently than cannabis" and it is not required "to be transported in an odor-proof container." *Id.* ¶ 51.

¶ 32 Next, in *Hall*, 2023 IL App (4th) 220209, ¶ 5, the defendant was the passenger of a vehicle stopped by the police in July 2020. The officer conducting the traffic stop "detected the odor of cannabis coming from the vehicle" and searched the vehicle, discovering cannabis and LSD. *Id.* The defendant filed a motion to suppress, arguing the search lacked probable cause because cannabis was a legal substance and its odor alone did not indicate unlawful activity. *Id.* ¶ 6. The trial court granted the defendant's motion, finding no basis upon which to treat the odor of cannabis differently than the odor of alcohol, and the State appealed. *Id.* ¶¶ 11-12.

¶ 33 On review, we reversed the trial court's decision. *Id.* ¶ 29. Initially, we found the circumstances of the underlying search were more similar to what occurred in *Hill* than in *Stout* or *Molina* because "probable cause existed based on more than just the odor of cannabis," specifically an admission by the front seat passenger of the vehicle that he possessed cannabis. *Id.* ¶ 24. Nevertheless, we concluded that had the officer "relied solely on the cannabis odor to provide probable cause," we would still find the trial court's reasoning in granting suppression unpersuasive. *Id.* ¶ 25. Like in *Molina*, we noted the regulatory differences between cannabis and alcohol and found that *Stout*'s holding remained good law and binding precedent. *Id.* ¶¶ 26-27. Additionally, noting the officer's detection of the odor of raw cannabis when approaching the vehicle, we stated as follows:

"[T]he Vehicle Code requires cannabis to be transported in an odor-proof container

- 13 -

while in a vehicle. 625 ILCS 5/11-502.1 (West 2020). Further, it is impossible to determine from the odor alone whether the quantity to be found is within legal limits. The facts available to [the officer] when she conducted the search constituted probable cause, as a reasonable person in her position would believe someone in the vehicle was at least transporting cannabis in a manner violating the Vehicle Code." *Id.* ¶ 27.

¶ 34 Finally, in addition to the above cases, we note an unpublished decision from this court that addresses similar issues in the context of a positive alert from a police canine—*People v. Webb*, 2022 IL App (4th) 210726-U. See Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021) (providing that a nonprecedential order entered under Rule 23(b) "may be cited for persuasive purposes"). There, the defendant was charged and found guilty of several drug-related offenses arising out of a March 2018 traffic stop of his tractor trailer. *Webb*, 2022 IL App (4th) 210726-U, ¶¶ 4, 15. During the stop, an officer conducted a "free air sniff with his canine partner around [the] defendant's truck." *Id.* ¶ 9. The canine was trained to detect the odors of several drugs, including cannabis, and had a positive alert on the defendant's vehicle. *Id.* Thereafter, the vehicle was searched, revealing the presence of cannabis. *Id.*

¶ 35 On review, the defendant argued his trial counsel was ineffective for failing to seek the suppression of evidence based on the contention that after the decriminalization of less than 10 grams of cannabis in 2016, a "positive canine alert for drugs, without more, could not" constitute probable cause for a vehicle search. *Id.* ¶ 24. This court rejected the defendant's claim based on the rationale set forth in *Hill*. *Id.* ¶ 35. It also rejected the defendant's claim that probable cause was lacking because no evidence showed an officer involved with the stop smelled cannabis, stating as follows:

"Defendant disregards that a positive canine alert for contraband constitutes probable cause to search a vehicle. [Citations.] At the hearing on the motion to suppress, [the officer] testified that his canine partner was certified in the detection of narcotics and, in addition to marijuana, was trained to detect crack cocaine, methamphetamine, heroin, and ecstasy. Like cannabis, it is illegal to possess any of those substances. [Citations.] Because [the officer's] canine alerted to the presence of at least one of the foregoing illegal substances, probable cause existed for the search of [the] defendant's vehicle." *Id.* ¶¶ 36-37.

¶ 36                                    D. This Case

¶ 37        As set forth above, the parties on appeal dispute whether, given the recent changes to cannabis laws in Illinois, a positive alert from a police canine trained to detect cannabis and other narcotics is, *alone*, sufficient to establish probable cause for a vehicle search. Initially, we note that the record in this case indicates that the totality of the facts and circumstances known to Officer Peed at the time of the search, which were indicative of drug activity, included more than just his canine's positive alert. Specifically, Peed testified at the suppression hearing that he "had previous knowledge of the defendant and the other occupants of the vehicle and drug use." His testimony suggests his familiarity with the three occupants of the vehicle and their illicit use of drugs. Such circumstances provide additional support for the vehicle search.

¶ 38        However, even assuming that Peed relied solely on the canine's positive alert, the relevant case authority supports the State's contention on appeal that the positive alert, alone, was sufficient to establish probable cause for the search. In *Stout*, the supreme court held that the odor of cannabis, without more, provides probable cause for a warrantless search of a vehicle. *Stout*, 106 Ill. 2d at 87-88. Following changes in Illinois cannabis law, which made cannabis legal to

possess in some circumstances, the court declined to overrule *Stout* (*Hill*, 2020 IL 124595, ¶ 15), and this court has explicitly held that *Stout* remains good law and binding precedent (*Rowell*, 2021 IL App (4th) 180819, ¶ 26). Such is true even after the enactment of the Cannabis Regulation and Tax Act in June 2019, legalizing small amounts of cannabis for recreational use. See *Molina*, 2022 IL App (4th) 220152, ¶ 52; *Hall*, 2023 IL App (4th) 220209, ¶ 27.

¶ 39    Defendant offers no direct challenge to case authority that applies the same proposition when the odor of narcotics is detected by a police canine. If the odor of cannabis detected by a police officer may establish probable cause for a search, so too may a positive alert from a trained police dog. See *Campbell*, 67 Ill. 2d 315-16 ("It is clear that the detection of narcotics by police smelling the odor is a permissible method of establishing probable cause [citations], and we see no significant difference in the use of dogs under identical circumstances."); *Neuberger*, 2011 IL App (2d) 100379, ¶¶ 9-10 (stating a canine's "alert supplied probable cause to search the vehicle in which [the] defendant had been traveling" and finding "no reason to reach a different result *** merely because the presence of drugs was detected via canine, rather than human, olfaction"); *Webb*, 2022 IL App (4th) 210726-U, ¶ 37 (stating probable cause existed for a search based on the positive alert of a canine trained to detect several drugs, including cannabis).

¶ 40    Moreover, defendant presents many of the same arguments in this appeal that we have previously rejected. Defendant argues that because the Cannabis Regulation and Tax Act "makes possession and use of cannabis explicitly legal," the odor of cannabis alone may not provide probable cause of for a vehicle search. She asserts that a canine trained to detect cannabis could alert to an odor that stems from legal behavior, noting canines can alert to residual odors, including the odor of cannabis "that attaches to someone's clothing."

¶ 41    However, simply because cannabis may be legal in some circumstances, does not

mean that it is not unlawful in others. See *Molina*, 2022 IL App (4th) 220152, ¶ 41 ("Just because [a] defendant can legally possess some amounts of cannabis under specified conditions does not mean that all forms of possession are presumed to be legal."). As we stated in *Molina*, "[r]egardless of recent changes in the law legalizing possession of small amounts of cannabis, there are still, among other things, (1) illegal ways to transport it, (2) illegal places to consume it, and (3) illegal amounts of it to possess." *Id.* ¶ 43.

¶ 42        At the time of the underlying traffic stop in this case, section 11-502.15 of the Vehicle Code required that when cannabis is being transported in a motor vehicle, it must be "in a *sealed*, *odor-proof*, child-resistant cannabis container." (Emphasis added.) 625 ILCS 5/11-502.15 (West 2020). A violation of that section is a Class A misdemeanor. *Id.* § 11-502.15(d). Thus, when the odor of cannabis is detectable in a vehicle, it is "almost certain" that there has been a violation of the Vehicle Code. *Molina*, 2022 IL App (4th) 220152, ¶ 44 ("[A]n officer who smells cannabis in a vehicle *** is almost certain to discover a violation of the Vehicle Code because *** the cannabis must be stored in a *sealed, odor-proof* container—in other words, the cannabis should be undetectable by smell by a police officer." (Emphasis in original.)).

¶ 43        Defendant challenges the above statement from *Molina* on the basis this court "offer[ed] no scientific evidence" to support it. However, the plain language of section 11-502.15 of the Vehicle Code is clear and unambiguous. *People v. Grant*, 2022 IL 126824, ¶ 24, 202 N.E.3d 233 ("When the language of a statute is clear and unambiguous, courts may not depart from the statute's terms [citation] nor construe the statute other than by its plain language."). It requires cannabis to be stored in a sealed container from which the odor of cannabis cannot be detected. We note that before the trial court, defendant raised the suggestion that it "very well might be that there's no such thing as an odor-proof container, especially as it relates to" canines, whose noses

are "highly sensitive." However, as the moving party on the motion to suppress, defendant had the burden of establishing both the factual and legal bases for her motion. At the hearing on the motion to suppress, she presented no evidence to support such a claim. To the extent she raises it on appeal, it is without factual support and must be rejected.

¶ 44    Our decision in *Molina* also addresses defendant's contention that because canines have the ability to detect the residual odors of narcotics, they could positively alert to lawful activity, including the scent of cannabis on clothing. In *Molina*, the trial court granted the defendant's motion to suppress evidence and, in doing so, theorized that there were many innocent reasons why a person or their vehicle might smell of cannabis. *Molina*, 2022 IL App (4th) 220152, ¶ 7. On review, we determined such potential innocent explanations were not fatal to a finding of probable cause, relying on legal propositions set forth in *Hill*, and stating as follows:

> " 'Probable cause deals with probabilities, not certainties. [Citation.] It is a flexible, commonsense standard that "does not demand any showing that such a belief be correct or more likely true than false." [Citation.] Therefore, probable cause does not require an officer to rule out any innocent explanations for suspicious facts. [Citation.] Instead, it requires only that the facts available to the officer—including the plausibility of an innocent explanation—would warrant a reasonable man to believe there is a reasonable probability "that certain items may be contraband or stolen property or useful as evidence of a crime." ' " *Id.* ¶ 48 (quoting *Hill*, 2020 IL 124595, ¶ 24).

¶ 45    Defendant further appears to suggest that because of the recent changes in cannabis law that make the drug legal for recreational use, cannabis is no longer contraband. According to defendant, "*Stout* and *Rowell* defined contraband as that of a substance that is illegal to possess in

- 18 -

all circumstances." However, defendant fails to cite to any portion of either decision to support that specific claim. Notably, in *Molina*, we stated "that the supreme court in *Stout* did not limit its holding in any way that would suggest the smell of cannabis constituted probable cause only because cannabis was generally illegal." *Id.* ¶ 43. Additionally, in *Hill*, the supreme court held both that (1) "the decriminalization of possessing small amounts of cannabis did not alter the status of cannabis as contraband" and (2) cannabis was "no longer contraband in every circumstance" because it was "not contraband for medical users." *Hill*, 2020 IL 124595, ¶¶ 31-32. Accordingly, we disagree that cannabis can no longer be considered contraband in any context because certain amounts are legal to possess.

¶ 46 Like she did before the trial court, defendant also maintains that cannabis should now be treated similarly to alcohol, the possession of which can be both lawful and unlawful. On appeal, she also relies on the Third District's decision in *People v. Stribling*, 2022 IL App (3d) 210098, ¶ 29, which suggested situations involving alcohol are analogous to cannabis fact patterns and held "that the smell of the burnt cannabis, without any corroborating factors, is not enough to establish probable cause to search the vehicle." However, in both *Molina* and *Hall*, we rejected the contention that cannabis should be treated like alcohol. *Molina*, 2022 IL App (4th) 220152, ¶¶ 50-51; *Hall*, 2023 IL App (4th) 220209, ¶ 26. Further, in *Molina*, this court expressed its disagreement with the Third District's holding in *Stribling*, as well as the rationale for that court's decision. *Molina*, 2022 IL App (4th) 220152, ¶ 55. Ultimately, we find defendant's contentions as to these points on appeal are unpersuasive, and we continue to adhere to both the reasoning and holdings of our prior decisions.

¶ 47 Finally, defendant also contends that police canines trained to detect cannabis are a "tool" capable of detecting legal activity similar to a "thermal-imaging camera" and, thus, the

canine's alert alone cannot provide probable cause for a vehicle search. In *Kyllo v. United States*, 533 U.S. 27, 29 (2001), the United States Supreme Court considered "whether the use of a thermal-imaging device aimed at a private home from a public street to detect relative amounts of heat within the home constitute[d] a 'search' within the meaning of the Fourth Amendment." It answered the question in the affirmative, concluding that where a device is used to explore details of the home and was capable of detecting lawful activity, the surveillance was a search and "presumptively unreasonable without a warrant." *Id.* at 40. Later, in *Illinois v. Caballes*, 543 U.S. 405, 410 (2005), the Supreme Court contrasted the circumstances at issue in *Kyllo* with situations involving police canines capable of detecting narcotics, finding a "dog sniff" that occurred during a lawful traffic stop did not violate the Fourth Amendment. It concluded that "the use of a well-trained narcotics-detection dog—one that does not expose noncontraband items that otherwise would remain hidden from public view, [citation]—during a lawful traffic stop, generally does not implicate legitimate privacy interests." (Internal quotation marks omitted.) *Id.* at 409.

¶ 48 We find the issues presented in *Kyllo* and *Caballes* differ from the precise issue presented in this case. Here, the issue is not (and was not before the trial court) the lawfulness under the Fourth Amendment of the canine's free-air sniff. Rather, the issue developed and presented by the parties concerns only whether the canine's positive alert, by itself, was sufficient to establish *probable cause* for the *vehicle search* by Officer Peed. As stated above, "[t]o establish probable cause, it must be shown that the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that the automobile contains contraband or evidence of criminal activity." *Hill*, 2020 IL 124595 ¶ 23. All that is required for probable cause to exist is a "fair probability." See *Florida v. Harris*, 568 U.S. 237, 246, n.2 (2013) ("In the usual case, the mere chance that the substance might no longer be at the

location does not matter; a well-trained dog's alert establishes a fair probability—all that is required for probable cause—that either drugs or evidence of a drug crime *** will be found.").

¶ 49    Evidence below established that the canine was certified and trained to detect five narcotic substances—cocaine, crack cocaine, heroin, methamphetamine, and cannabis. His positive alert on the vehicle in this case established a fair probability that drugs or evidence of a crime would be found in the vehicle. This is true despite recent changes in the law regarding the legalization of small amounts of cannabis as "there are still, among other things, (1) illegal ways to transport it, (2) illegal places to consume it, and (3) illegal amounts of it to possess." *Molina*, 2022 IL App (4th) 220152, ¶ 43. Accordingly, probable cause for the vehicle search existed based upon the canine's positive alert, and the trial court erred in finding otherwise.

¶ 50                        III. CONCLUSION

¶ 51    For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

¶ 52    Reversed and remanded.

*People v. Mallery*, 2023 IL App (4th) 220528

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Henry County, No. 21-CF-266; the Hon. Terence M. Patton, Judge, presiding. |
| **Attorneys for Appellant:** | Catherine L. Runty, State's Attorney, of Cambridge (Patrick Delfino, David J. Robinson, and Luke McNeill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | Matthew Paulson, of Paulson, Vandersnick & Bradfield Law, of Rock Island, for appellee. |